STATE OF MAINE *vs.* LINWOOD H. MOSLEY.

Hancock.        Opinion, November 6, 1934.

*Clyde R. Chapman, Attorney General,*
*Percy T. Clarke, County Attorney,* for State.
*Blaisdell & Blaisdell,*
*Fred L. Mason,* for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

PATTANGALL, C. J.    Appeal and exceptions. Respondent, indicted for murder, was tried and convicted of that crime. A general motion, in the usual form, to set the verdict aside was filed below and overruled. Appeal was taken. Exceptions to the admission of certain evidence were seasonably taken and allowed. Later, motion was filed for new trial on newly discovered evidence. At the hearing before this Court, it was also urged that the failure of the presiding Justice to sufficiently state the law as to one feature of the case was cause for new trial and might properly be considered under the appeal, no instructions having been requested and no exception taken covering the point.

The record admits the homicide. There is no dispute but that respondent shot and killed one Elwood Gilley. It is not claimed that

he intended to do so. The theory of the State was that respondent intentionally shot and wounded one Delia Hooper and, in doing so, by mischance killed Gilley who was standing near her. The theory of the defense was that respondent did not intend to shoot anybody, but that a gun held by him was accidently discharged, the injury to Mrs. Hooper and the death of Gilley resulting.

It appeared that respondent and his wife, with Gilley and Mrs. Hooper, were spending the day together, a portion of the time at a lobster pound and the remainder at a farm belonging to respondent. During the day, respondent and the two women drank more or less liquor. The four ate lunch together and, after lunch while the men were temporarily absent, the women took a short nap. After the men returned, respondent and his wife walked to the pasture to look at some cows, Gilley and Mrs. Hooper remaining at the farmhouse. There was no evidence of drinking after lunch time, but there was evidence tending to show that during the earlier portion of the day, Mrs. Hooper and Mr. Mosley were intoxicated. There is also evidence tending to show that respondent made improper advances to Mrs. Hooper which she rejected. In the late afternoon, the party was about to break up and preparations were being made to leave the farm, when the shooting occurred.

In the corner of the kitchen of the farmhouse were two shotguns, one belonging to respondent, one to Gilley. It was with the latter weapon that the shooting was done. There were but four persons present when it occurred, respondent, his wife, Mrs. Hooper and Gilley. Respondent did not avail himself of his right to testify. The jury, therefore, was dependent upon his wife and Mrs. Hooper, so far as oral evidence was concerned, for the necessary information upon which to base its verdict. According to Mrs. Hooper, respondent pointed the shotgun directly at her head. Observing his action, Gilley who was standing between them threw up his arm either to protect her or to interfere with respondent's aim. The weapon was discharged and the shot took effect in Gilley's arm and chest and in Mrs. Hooper's face and neck.

According to Mrs. Mosley, respondent, at Gilley's request, started to take the gun from the house to hand it to its owner, who had asked for it, and while respondent was standing in the doorway, Gilley and Mrs. Hooper being outside, she (Mrs. Mosley), not

knowing the exact situation, abruptly closed the door in such a way that it struck her husband and caused the accidental discharge of the gun.

The jury apparently accepted Mrs. Hooper's version and rejected that of Mrs. Mosley. In support of the general motion, counsel for respondent argued, and not without support in the record, that Mrs. Hooper's story presented certain inconsistencies and contradictions which tended to discredit her. The claim is made that she was intoxicated and therefore unable to remember just what did happen and that she has, at different times, varied her relation of the events.

The evidence of intoxication is not carried to a point which would convince that she was not capable of appreciating everything of importance that occurred, nor does the fact that in minor details she was somewhat vague and uncertain indicate that she was not truthful as to the main facts which her testimony tends to establish. Respondent shot and killed Gilley. He shot and wounded Mrs. Hooper. There is no doubt about either of these facts. Mrs. Hooper may be wrong as to the place where respondent was standing when he did the shooting and as to where she and Gilley stood. But we are not impressed with the importance of the evidence on these points, nor would we regard it as remarkable that after such an occurrence she should be somewhat confused as to the exact details of the events immediately preceding the shooting. The evidence indicates that the shots were fired from a gun held at the shoulder of respondent and pointed directly at Mrs. Hooper's face. Her wounds and those of Gilley, shots lodged in a building near where they were standing, tend to sustain such a theory. The jury was entirely justified in assuming that the witness was endeavoring to answer truthfully and that her testimony, so far as it bore upon the real issue, was correct and could safely be relied upon.

On the other hand, the only other witness who testified regarding the main facts was the wife of the respondent, who was successfully impeached and whose story is inherently improbable. We cannot say that the jury erred in rejecting it.

It was also argued that the appeal should be sustained because the presiding Justice neglected to instruct the jury with regard to the law concerning intoxication as affecting ability to form an

intent. There was no occasion to do so. No claim was made that respondent was sufficiently under the influence of liquor to require such an instruction and there was no evidence warranting it. On the contrary, the opposite appeared.

The situation was entirely unlike that in *State* v. *Wright*, 128 Me., 404, 148 A., 141, on which respondent relies. In that case, the issue was whether or not respondent was guilty of involuntary manslaughter, the homicide having been caused by his negligent act. The presiding Justice instructed the jury that there was no distinction between criminal and civil negligence and, although no exception was noted, the instruction was so plainly wrong and the point involved so vital that a new trial was ordered on the ground that the verdict must have been based upon a misconception of the law, following the rule laid down in *Pierce* v. *Rodliff*, 95 Me., 346, 50 A., 32; and *Simonds* v. *Maine Tel. & Tel. Co.*, 104 Me., 440, 72 A., 175.

The appeal must be dismissed.

The motion for new trial on the ground of newly discovered evidence is without merit. It might properly be dismissed on the ground that it is not before the Court. The procedure followed was applicable to a civil, not a criminal, case. The distinction is carefully made and the governing rule clearly stated in *State* v. *Gustin*, 123 Me., 307, 122 A., 856. But even had correct practice been followed, respondent would not benefit by this motion. The newly discovered evidence consisted of statements that Mrs. Hooper had, after verdict, contradicted the testimony given by her. Such evidence would have no probative force as to the facts. Its only effect would be impeaching. A new trial may not be granted on newly discovered evidence of that character. *Shalit* v. *Shalit*, 126 Me., 291, 138 A., 70.

The sole exception relied on relates to the admission of certain rebuttal evidence offered for the purpose of impeaching Mrs. Mosley. She was asked, in cross examination, whether she had not, in interviews with the state officials, made statements contradictory to those given in her testimony. She was unable to recall certain specific questions and answers but stated she had not previously given a truthful account of what happened at the farm house, "keeping as far away from the truth as possible." In order to show

that her contradictory statements related to material matters, the State offered evidence as to what she really did say at the interviews in question. Counsel for respondent objected to the admission of the testimony and, his objection being overruled, excepted. There is no merit in this exception. The evidence was clearly admissible in rebuttal.

But during the argument concerning its admission, the presiding Justice said, "I think it is admissible as tending to rebut the inference to be drawn on the statement of Mrs. Mosley to the effect that she was inside when she heard the explosion." In this, he unquestionably erred. The testimony had no probative force as to the facts. It was only admissible as affecting her credibility. But the objection was general. No exception was taken to the remark made by the trial judge and no request was made to limit the application of the evidence. The objection was squarely to its admission.

"That evidence otherwise competent and admissible as tending to prove one cause of action also tends to prove other and graver wrongs, does not make it any the less admissible for the original purpose." *State* v. *Farmer*, 84 Me., 436, 24 A., 985; *Plourd* v. *Jarvis*, 99 Me., 163, 58 A., 774; *Beaudette* v. *Gagne*, 87 Me., 534, 33 A., 23; *O'Brien* v. *White & Company*, 105 Me., 308, 74 A., 721; *People* v. *Doyle*, 21 Mich. 221.

"It has been considered that if a Judge decides right though he may give erroneous reasons for so doing, yet no ground is thereby afforded for sustaining a writ of error; and we have repeatedly decided in such cases that the excepting party was not aggrieved and when in such cases exceptions have been taken, we have overruled them." *Warren* v. *Walker*, 23 Me., 453.

"If testimony is material and admissible on one ground, it is not reversible error to admit it on another and untenable ground." *Lausier* v. *Hooper*, 112 Me., 333, 92 A., 179.

"It is a matter of very little consequence whether a reason assigned by a Judge at nisi prius for his ruling is or not technically accurate and sound. Doubtless what may be denominated a sound legal instinct produces many correct results upon the admissibility of testimony when the Judge who made them might not be ready to state the true reason with precision or even with a perfect comprehension of the proper grounds upon which the admission or ex-

clusion should be placed. The question before us is not whether the presiding Justice placed the admission of the testimony upon exactly the true ground but whether or not it is competent testimony." *State* v. *Wagner*, 61 Me., 178.

"An objection to the failure of the Court to charge the jury upon a specific point cannot be raised for the first time by an assignment of error to the appellate court." *People* v. *Raher*, 92 Mich., 165, 52 N. W., 625, 31 A. S. A., 575.

"Error cannot be based upon the failure of the trial court to give instructions when no request was made for them." *Wragge* v. *Railroad Company*, 47 S. C., 105, 25 S. E., 76, 58 A. S. R., 70.

"It cannot be objected to on appeal that evidence properly admissible for a certain purpose was admitted without instruction limiting its application to such purpose where no request was made for such instruction." *Hasbrouck* v. *Western Union Telegraph Co.*, 107 Ia., 160, 77 N. W., 1034, 70 A. S. R., 181.

"Here the only question can be what the proper means are for avoiding the risk of misusing the evidence. It is uniformly conceded that the instruction of the Court suffices for the purpose; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise, he may be supposed to have waived it as unnecessary for his protection." *Wigmore on Evidence*, Vol. 1, Sec. 13, p. 42.

We think that respondent was not prejudiced by the failure of counsel to request an instruction limiting the application of the rebutting testimony. The only evidence on the vital point of the case, on which a theory of purely accidental shooting could have been predicted, was that of Mrs. Mosley. In any view of the matter, she was so discredited that no jury would have been justified in relying on her testimony.

A study of the entire record convinces us that the jury was warranted in believing, beyond a reasonable doubt, and, therefore, in finding, that the respondent was guilty as charged. No injustice is done him by a refusal on the part of this Court to disturb the verdict.

*Motion and exception overruled.*
*Appeal dismissed.*
*Judgment for the State.*