**STATE of Maine**

**v.**

**Frank FOURNIER.**

Supreme Judicial Court of Maine.

July 16, 1970.

Robert T. Coffin, County Atty., Chadbourn H. Smith, (Law Student) Portland, for plaintiff.

George Milliken, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

The defendant-appellant, Frank Fournier, was indicted under 17 M.R.S.A. § 3401 for the crime of robbery by stealing with force and violence a sum of money from the person of one Kenneth Morrison. Tried before a jury, Fournier was found guilty and sentenced to the Men's Correctional Center, from which judgment he now appeals. His appeal is hereby denied.

The defendant claims error in that the State was permitted to impeach its own witness, Antonio R. Leo, and says the error was compounded when the State was allowed to have Sergeant William N. Pearson of the Maine State Police testify in furtherance of the reference impeachment. This issue arose in the following manner. The witness Leo had been indicted for the same crime of robbery of Kenneth Morrison. In order to prove its case against the defendant Fournier and one Gardner Corey, a co-defendant, the State extended immunity to Leo and called him as its own witness. When Leo's testimony in direct examination by the State prosecutor departed in material aspects from prior statements made by the witness to Officer Pearson of the Maine State Police respecting the participation of the co-defendant Corey in the robbery, the State's Attorney inquired from the witness concerning the alleged prior inconsistent statements. Leo first equivocated but then categorically denied telling Officer Pearson that Gardner Corey was there and positively asserted that he, Leo, drove around the block before the scuffle and not afterwards as his prior statement indicated. We note in passing that Leo did not retreat to any degree in his testimony from implicating in the robbery the defendant Fournier. On objection by the attorneys of both defendants, the Court below ruled the witness hostile, allowed the State to cross-examine Mr. Leo and permitted his prior inconsistent statement to be introduced through Officer Pearson, instructing the jury that even though he permitted the State to treat the witness Leo as a hostile witness, subject to cross-examination, nevertheless the weight to be accorded his testimony was for the jury as the fact finder and for the jury alone. The Justice below further instructed the jury that the prior statement of the witness Leo as testified to by Officer Pearson was offered solely for the purpose of impeaching or discrediting the testimony of Mr. Leo despite the fact that Mr. Leo was called as a State's witness in the first place and specifically emphasized to the jury

"again, you will not give weight to, or consideration to, the testimony of the State Police officer as bearing upon the truth of what Mr. Leo is alleged to have said to him on this prior occasion. You shall use that testimony only for the purpose of determining how much weight you wish to give to the testimony of Mr. Leo which was given from the stand."

■ It is a long established rule that a party calling a witness may not *by general evidence* impeach his competency or credibility. But, as stated in State v. Sanborn, 1921, 120 Me. 170, 113 A. 54, "this rule never contemplated that the truth should be shut out and justice perverted. It does not prevent the showing by other witnesses, or by the direct or redirect examination, that the facts are otherwise than the witness testified to." See also, State v. DeBery, 1954, 150 Me. 38, 103 A.2d 526.

■ It was proper for the State, when it found the witness Leo, whom it felt compelled to call because of the necessities of the case, partially adverse to the interests of the State out of an apparent bias to-

**640**

wards the co-defendant Corey, to seek from the presiding Justice a ruling that the witness was hostile and that the State could thereafter examine the witness by way of cross-examination. The occasion for the exercise of this right must be determined by the trial Court in the exercise of a sound judicial discretion. The Court below committed no error in permitting the State to cross-examine its own witness. There was no abuse of discretion. State v. McFarland, 1967, Me., 232 A.2d 804.

■ It was proper for the State to cross-examine its own witness about prior statements made by him in contradiction of his testimony in court. These prior statements however are not to be treated as having any substantive or independent testimonial value. State v. Chickering, 1952, 97 N.H. 368, 89 A.2d 206; 98 C.J.S. Witnesses § 578(d) and cases cited at note 84. The jury in the instant case was instructed, and properly so, that they may consider the prior inconsistent statements solely for impeachment purposes, that is, in reaching their decision whether to believe the testimony of the witness as given in court, which testimony the prior statement contradicted. The Court clearly conveyed to the jury that the prior inconsistent statements should not be used by them as proof of the truth of the matter therein stated. There was no error in these instructions as a matter of law, and as a matter of fact, the ruling was not prejudicial to the defendant Fournier. See, State v. Gallicchio, 1965, 44 N.J. 540, 210 A.2d 409.

■ We noticed, however, that at the time of the introduction of the inconsistent statements, the Court stated that it would instruct the jury at a later time of the relatively limited use which may be made of that type of testimony. No request was advanced by counsel for a contemporaneous instruction to the jury upon the subject. We believe the better practice to be that when the trial court permits prior inconsistent statements to be introduced for impeachment purposes only, the jury should

be instructed contemporaneously, as well as at the conclusion of the case, to the effect that such prior statements are not to be used as proof of the truth of the matter therein stated, but are to be considered only in assessing the veracity of the witness' contradictory testimony. Such contemporaneous instruction will tend to minimize, in a trial of long duration, an initial erroneous conception by the jury of the evidence which otherwise final instructions may remove with difficulty. The instant case did not present such a problem.

■ The defendant's other point of error on appeal raises the issue that the verdict was against the evidence and the weight thereof, especially in light of the fact that the testimony of the witness Philbrick was contradictory and inconclusive as to identification of the defendant-appellant; he says the Court below erred in denying his motion for acquittal at the conclusion of the evidence.

It is true that Philbrick's testimony contradicted somewhat some of the other evidence. His observations were made between two and three o'clock in the morning of October 13, 1968 at some distance away from the scene of the robbery. He testified positively that four people were involved, the victim who was on the ground, two others who were on top of the assaulted person and one standing by. Although he identified all three of the alleged assailants, including the defendant, he could not say which of the three had been throwing punches at the victim. Furthermore, he identified the defendant Fournier, as being one of the 2 persons arrested by the police in a nearby restaurant shortly after the event. In this, he was mistaken, since all the testimony indicates that the 2 people arrested at the restaurant were Leo and Corey, the defendant Fournier being brought to the police station sometime later. Such confusion is readily understandable since the witness was testifying on May 20, 1969 to events happening some 7 months previously and especially since the defendant Fournier was stated to have shed

a beard prior to trial. Notwithstanding such inconsistency, the defendant Fournier was positively identified by the victim and the witness Leo. Morrison testified that although it was dark, the man with the beard came close and he saw him very clearly. He further positively stated that he knew the man with the beard was the one that hit him. This bearded individual whom the police brought to the police station shortly after the arrest of Leo and Corey at the restaurant was none other than the defendant Fournier.

 The credence to be given to witnesses, the resolution of conflicts and inconsistencies existing in the testimony of witnesses or in the testimony of any single witness and the weight to be given to any particular portion thereof, are all matters for the jury to settle. State v. Vallee, 1941, 137 Me. 311, 19 A.2d 429; State v. Beety, 1940, 137 Me. 327, 15 A.2d 293. True it is that all the principal facts proven in a criminal case must be both consistent with each other and inconsistent with the innocence of the person accused, but the issue of consistency within the context of that rule does not depend upon the absolute absence of any inconsistency in the evidence. It is for the jury to determine what part of the evidence presented at the trial was credible and worthy of belief, as well as the relative weight of the testimony. State v. Cox, 1941, 138 Me. 151, 23 A.2d 634. If, at the trial of a case, there is a conflict in the evidence, the jury must, so far as possible, reconcile the testimony before it; if the evidence given by different witnesses presenting different states of fact, cannot be reconciled by the jury, then the triers of the facts must determine what part of the evidence is credible and worthy of belief, and assess the relative weight of testimony. State v. Merry, 1939, 136 Me. 243, 262, 8 A.2d 143, 153; State v. Miller, 1969, Me., 253 A.2d 58, 61.

We have examined the whole record with care to determine whether, in view of all the evidence, the jury was justified in believing beyond a reasonable doubt that the defendant was guilty of the crime of robbery as charged. We must answer in the affirmative.

The entry will be

Appeal denied.

POMEROY, J., did not sit.