**STATE of Maine**

v.

**John McDONOUGH.**

Supreme Judicial Court of Maine.

Jan. 12, 1976.

Henry N. Berry III, Dist. Atty., Richard J. Kelly, Peter G. Ballou, Asst. Dist. Attys., Portland, Alvaro Smith-Ruiz, Law Student, for plaintiff.

Bennett, Kelly & Zimmerman, by Peter J. DeTroy III, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

On March 4, 1974, at approximately 8:30 P. M., a man masked by a nylon stocking entered the P & J variety store in Portland, Maine. His right arm was extended and his hand was covered by a newspaper. The only other person in the store was a

clerk, whom the masked man ordered to empty the cash drawer. After the robber fled with the proceeds of his crime, the clerk notified the police and identified the defendant, John McDonough, as the robber. The defendant was arrested shortly thereafter.

After the clerk's reluctance to testify forced the postponement of the trial, the defendant was finally convicted of robbery in the Superior Court for Cumberland County. The only evidence against the defendant was the clerk's identification and testimony by the owner of the store that he had seen the defendant standing on the sidewalk in front of the store when he briefly visited the building about fifteen minutes before the robbery. He said the defendant was still there when he looked twice through the window, and the third time he looked the defendant was not in sight. The owner then left to go home and about five minutes later the robbery took place. Because of the crucial quality of the clerk's testimony, the defendant attempted to call its accuracy into question, stressing particularly the resemblance between the defendant and other members of his family. The clerk, however, repeatedly stated his certainty as to the identity of the robber and the defendant was found guilty.

A month after the trial and immediately before sentencing, the defendant presented his brother, Patrick McDonough, to the Court. Patrick McDonough informed the Court that it was he who had committed the robbery and that he was willing to plead guilty if a charge was brought against him. The skeptical presiding Justice tested Patrick's sincerity by telling him he would receive 10 to 20 years in the State Prison. At this, Patrick retreated from his original position, now saying that he would want a trial. The Justice, unconvinced of Patrick's ingenuousness, recognized the possibility that if he "let this defendant off because his brother says he did it, then the brother goes to trial, then this defendant will say he did it."

The Justice sentenced the defendant to 2½ to 5 years in prison and stayed execution of sentence 30 days to give defense counsel "an opportunity to do something about the brother." He suggested that the County Attorney present the evidence as to Patrick's claim to the grand jury. We know only that Patrick has never been indicted.

The defendant entered an appeal and several months later he filed a motion for new trial based upon the confession of his brother. The Court, after hearing, denied the motion on the ground that Patrick McDonough's confession was insufficient basis for disturbing the defendant's conviction. The defendant also appealed from this denial.

The defendant raises five points on appeal; (1) the Court's denial of his motion for a new trial was in error; (2) the identification of the defendant was insufficient to sustain the verdict; (3) the introduction into evidence of references to a polygraph test used to corroborate the clerk's testimony was prejudicial error; (4) the admission into evidence of the same witness's statements that he was afraid of the defendant and his family because of their reputation for violence was prejudicial error; (5) the Court's failure specifically to instruct the jury that they must find that the taking of the property was accompanied by force or violence was obvious error. We find no merit to any of these claims and deny the appeals.

*The Denial of the Defendant's Motion For New Trial* [1]

On March 6, 1975, a hearing was held on defendant's motion for a new trial at

---

[1]. Although defendant's motion is not designated as a motion for new trial based on newly discovered evidence, we so interpret it in view of its phraseology and the fact that it was filed months after the expiration date for the filing of motions for new trial based on "any other ground". M.R.Crim.P., Rule 33.

which Patrick McDonough, the defendant's brother, again confessed to the robbery for which his brother was convicted. The attorney who had represented the defendant testified that before trial Patrick had admitted to him that he had committed the robbery but had also stated that if called as a witness he would plead the fifth amendment. A conference had taken place with the attorney, the defendant, Patrick and a third brother participating at which a "family wish" was announced to risk the defendant's trial without implicating Patrick. The attorney and the defendant had then decided that the best tactic at trial, in addition to an alibi defense, would be to weaken the strength of the clerk's testimony by impressing the jury with the physical similarity of the two brothers. To this end, the defendant had staged an in-court demonstration in which both brothers appeared before the jury, each with a stocking over his face.

The Justice denied the motion, apparently concluding that the brothers McDonough were attempting to impose upon him a Hobson's choice under which John would be released and Patrick would then chance acquittal after a separate trial. He emphasized that if Patrick were telling the truth both brothers were guilty of a conspiracy to obstruct justice and concluded his denial by stating:

> "At the moment John McDonough stands sentenced to 2½ to 5 years. If Patrick wants to plead guilty to conspiracy to obstruct justice as well as John McDonough, the court would consider a sentence on those charges of 2½ to 5 years for each one. If Patrick McDonough is now telling the truth, that would be a just disposition of both cases."

While it is not entirely clear as to the grounds upon which the Justice below denied the defendant's motion for a new trial, we agree with his ultimate decision. The Justice's discretion in this situation was circumscribed by the criteria estab-lished by M.R.Crim.P., Rule 33 which permits the court to order a new trial on the basis of newly discovered evidence.

■ This Court has enumerated the prerequisites for allowing a new trial based upon newly discovered evidence. They are: (1) the evidence is such as will probably change the result if a new trial is ordered; (2) it has been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it is material to the issue; (5) it is not merely cumulative or impeaching, unless it is clear that impeachment would have resulted in a different verdict. *State v. Casale*, 148 Me. 312, 92 A.2d 718 (1952).

■ Patrick McDonough's confession may in no way be considered newly discovered evidence. John McDonough and his attorney were aware of that confession at the time of trial and nevertheless decided that circumstances prevented them from presenting it to the jury. Evidence known to the accused at the time of trial cannot be considered newly discovered. *State v. Lund*, Me., 266 A.2d 869 (1970).

The defendant further claims that even if the evidence was not newly discovered, Patrick McDonough's representations that he would invoke the fifth amendment if called to testify should be considered a reasonable excuse for the failure to call him to the stand. The defendant argues that under the law of some jurisdictions evidence that is known to the accused and is therefore not newly discovered may yet be a sufficient basis for a new trial where justice so requires if the defendant can show a reasonable excuse for failure to employ it at trial. *People v. DeVore*, 271 Ill. 27, 110 N.E. 850 (1915).

If a situation could arise in which testimony which was unavailable at time of trial because of constitutional immunity later becomes available, entitling a defendant to a new trial, this is not such a situation.

The defendant admits that he was at time of trial aware of his brother's claim of guilt but he elected to make no attempt to present this testimony to the Court and jury.

We note that in order to raise a declarant's constitutional immunity for the purpose of satisfying the unavailability requirement for the admission of a declaration against interest, the declarant must actually be produced as a witness and refuse to testify. *Goates v. Fortune Lincoln Mercury, Inc.*, 446 S.W.2d 913 (Tex.Civ.App. 1969). A similar requirement should obtain in a case such as the one now before us in which the defendant seeks a new trial based upon the unavailability of a witness's testimony due to constitutional immunity. The defendant who seeks a new trial is required to make all diligent efforts to introduce into evidence any existing exculpatory facts before he may be allowed to plead reasonable excuse for his failure to present that evidence. We perceive two reasons for adopting this policy. First, on our facts, the defendant may not confidently assume that the witness, called to the stand and placed under oath, would invariably adhere to his out-of-court position. More importantly, however, Patrick's in-court refusal to testify would have substantiated the defendant's claim that his failure to produce the evidence was occasioned by his belief that Patrick would not exculpate his brother by incriminating himself. Although we do not suggest that this defendant was guilty of any wrongdoing, excuses for failure to produce "evidence" at trial may be manufactured all too easily once a defendant has gambled on acquittal and lost.

In choosing not to call his brother to the stand, the defendant made a tactical decision. That his decision proved fruitless should not constitute a reasonable excuse for his failure to attempt to introduce the evidence at trial. The defendant was entitled as a matter of right to one, but only one, fair trial. *State v. Flaherty*, Me., 340 A.2d 212 (1975). On these facts, the "interests of justice" do not require us to undo the effects of his own abortive strategy by entitling him a second. The Justice below did not abuse his discretion in denying the motion for a new trial.

*Sufficiency of the Evidence*

The heart of the State's case against the defendant was the identification of him by Martin Coyne, the clerk on duty at the time of the robbery. The trial was continued on one occasion after Mr. Coyne informed the police that he was no longer certain of the robber's identity. He was immediately subjected to a polygraph test at police headquarters and was told that the polygraph indicated that he responded falsely when he answered "no" to the question of whether the defendant had committed the robbery. He then reasserted his earlier claim that the defendant was the robber. At trial, the witness admitted that he had attempted to change his testimony from fear of retaliation by the McDonoughs.

The defendant claims that this series of events sufficiently beclouded the witness's identification to render erroneous the jury's verdict of guilty. The defendant did not, however, preserve the question of sufficiency of the evidence for appellate review by moving for a verdict of acquittal at any time during trial. M.R.Crim.P., Rule 29; *State v. Brewer*, Me., 325 A.2d 26 (1974). Our review of the matter is therefore limited by the manifest error rule which permits the defendant relief only upon the presence of "serious prejudice tending to produce manifest injustice." M.R.Crim.P., Rule 52(b); *State v. Collins*, Me., 297 A.2d 620, 631 (1972).

The weight and credibility of a witness's testimony are matters to be resolved by the jury whose determinations will not be disturbed unless the evidence is insufficient to justify the verdict. *State v. Worrey*, Me., 322 A.2d 73 (1974). The witness positively identified the defendant

as the man who robbed him and the jury believed his testimony both on this matter and on his explanation of his earlier "uncertainty". The uncorroborated testimony of a single robbery victim can support a verdict of guilty. *State v. Call*, Me., 322 A.2d 64 (1974). We find no manifest error in the sufficiency of the evidence to support the verdict.

## Evidence of the Polygraph Test

At trial, the defendant attempted to impeach Mr. Coyne's identification of him through the introduction of the witness's prior inconsistent statements to the police that he was no longer certain of the robber's identity. The defendant's cross examination attempted to emphasize that it was not until after the polygraphic examination that the witness reaffirmed his original certainty of the robber's identity. The apparent intended thrust of this testimony was to permit the jury to infer that the witness' certainty at the time of trial was spurious, induced in part by subtle police coercion through the form of the questions to which he was subjected during the polygraph examination. On redirect, the State then made a brief reference to the polygraph test in the nature of rehabilitation of its witness.[2] On redirect, the witness further stated that he had always been certain that John McDonough was the robber and had expressed doubt only to avoid exposing himself to the danger of retaliation from the defendant or his brothers.

■■ The defendant now seeks a reversal, claiming that the admission of the witness's polygraphic examination, and especially testimony by a police officer that the examination had been ordered by a Superior Court justice, were highly prejudicial because they conveyed to the jury the impression that the test results confirmed the veracity of the story the witness related to the jury while on the stand. Because the defendant did not object to this evidence at trial (and was in fact the moving force behind its admission), we must now consider this matter under the manifest error rule stated above.

In *State v. Mower*, Me., 314 A.2d 840, 841 (1974), this Court excluded "as having a bearing on the question of the consciousness of guilt" evidence of both the results of polygraph tests and the willingness or refusal of a witness to submit to such a test. That decision was based upon our belief that the polygraph was not a sufficiently reliable or accurate means for producing competent evidence.

■■ While we have by no means deviated from the position stated in that case, we do not think that the introduction into evidence in the instant case of the witness's polygraphic examination was manifestly prejudicial to the defendant. Here, the evidence was introduced by the defendant for the purpose of impeaching the testimony of Martin Coyne, the State's principal witness. Every defendant is entitled to

2. "Q  Mr. MacNichol also went into your visit with the police department in regard to this case and the lie-detector test that you took?
A  Right.
Q  In that lie-detector test you were asked various questions, one of which was, did John McDonough rob the P. and J. Variety Store?
A  Yes.
Q  You answered "no" to that question?
A  Right.
Q  There was also some indication that this was an untruthful answer. Was that a truthful answer, "no"?
A  No.
Q  What was the truth?

A  Yes.
Q  Is there any other answer that you could have given to that question?
A  I couldn't have.
Q  Were you unsure, at that time, as to who had robbed the P. and J. Variety store?
A  No.

Q  Were you unsure at that time of the lie detector test as to who robbed the P. and J. Variety Store?
A  I was sure.
Q  Who was it?
A  John McDonough."

submit to the jury all proper evidence bearing upon the credibility of the State's witnesses. The witness's submission to polygraphic examination was not introduced by the defendant for the purpose of proving or disproving the truthfulness of the answers elicited thereunder, but rather to suggest that the administration of the test had been instrumental in procuring the witness's present testimony, a fact which, if true, would render that testimony suspect.

▮▮▮▮ Relevant evidence may be excluded if its probative value is significantly outweighed by its prejudicial effect on the jury. *State v. Northup,* Me., 318 A.2d 489, 493 (1974). In evaluating the impact of evidence upon the jury, the trial Justice is allowed wide discretion. *State v. Gagne,* Me., 343 A.2d 186 (1975). We wish to emphasize that before evidence as potentially prejudicial as a polygraphic examination is admitted into evidence for any reason, it should be carefully scrutinized by the presiding Justice, preferably in an offer of proof beyond the hearing of the jury. *See State v. Mottram,* 158 Me. 325, 184 A.2d 225 (1962). We nevertheless believe that the admission of this evidence in this case did not manifestly prejudice the rights of the defendant.

▮▮▮▮ The State's attempts to rehabilitate its witness may incidentally have tended to mingle the witness's testimony and the results of his polygraph test in an undifferentiated union, at least in the minds of the jury. If such occurred, the danger of admitting evidence of polygraphic tests is thereby underscored. The defendant, however, may not complain. Whatever prejudice, and we do not think it was great, may have resulted to the defendant occurred as a direct response of evidence presented by him. "The response evoked may have been highly damaging, but one who would pry open a box may expect to have the lid slammed on his fingers." *United States v. Kubitsky,* 469 F.2d 1253, 1255 (1st Cir. 1972). The presiding Jus-

tice did not abuse his discretion in admitting the evidence to which the defendant now objects. *State v. Gagne,* supra, 343 A.2d at 196.

### Evidence of the Defendant's Reputation

While testifying on re-direct examination, Martin Coyne explained that his initial reluctance to testify was due to his fear of the McDonough family, to their "reputation for getting into fights and stuff." The defendant, who objected to this line of questioning, established during re-cross examination that the defendant had never actually threatened the witness. The defendant now claims that the evidence of his unsavory reputation was improperly admitted for two reasons: first, because the State failed to provide any foundation upon which the witness could have based his opinion, and secondly, that, since evidence of character may not be admitted to show that the defendant acted in accordance therewith, the evidence tended to prejudicially substantiate the witness's testimony by suggesting the defendant's reputation for violence.

▮▮▮▮ It is of course true that a witness who testifies as to reputation must demonstrate to the court the basis which supports his testimony. *Poff v. State,* 3 Md.App. 289, 239 A.2d 121 (1968). In the present case, however, the witness's statement about the reputation of the defendant was not admitted to suggest his propensity for committing violent crimes or for any other purpose that brought the truth or reliability of the witness's beliefs into issue. Rather, his testimony was elicited to explain his prior inconsistent statements and was therefore intended only to rehabilitate the witness, not to establish the guilt of the accused. A witness against whom prior inconsistent statements have been introduced may explain those inconsistencies, even though his explanation paints the defendant in unfavorable hues. *Commonwealth v. Carr,* 436 Pa. 124, 259 A.2d 165 (1969). *See State v. Hudson,* Me., 325 A.2d 56 (1974).

Evidence inadmissible for one reason may be admissible for another and is properly subject to a limiting instruction. *State v. Brown,* 142 Me. 106, 48 A.2d 242 (1946). The presiding Justice gave no limiting instruction, but no such instruction was requested. The opponent of evidence must request an instruction limiting its application to a certain purpose or he is deemed to have waived his right to the instruction. *State v. Mosley,* 133 Me. 168, 175 A. 307 (1934). Neither the initial admission of the evidence nor its submission to the jury without an appropriate instruction prejudiced the defendant.

*The Court's Instructions*

The defendant was charged with robbery, a violation of 17 M.R.S.A. § 3401. The Court instructed the jury on the elements of robbery by reading directly from the statute. The Justice then stated, "I think counsel on both sides consider someone robbed the store within the meaning of robbery as I just defined it to you." The defendant contends that the instructions were inadequate bcause they failed to inform the jurors that they must find the taking of property to have been effectuated by fear or force and violence, and indeed foreclosed that issue from their consideration. Admitting that no objection was made to this instruction at the time it was given,[3] defendant claims the error was sufficiently prejudicial to warrant preservation for appellate review under M.R. Crim.P., Rule 52(b).

We do not think that the instructions by the trial Justice contained seriously prejudicial errors tending to produce manifest injustice within the meaning of Rule 52(b). *See State v. Langley,* Me., 242 A.2d 688 (1968). The propriety of jury instructions must be determined by reading them in their entirety, not by examining certain isolated passages. *State v. Armstrong,* Me., 344 A.2d 42 (1975); *State v. Palumbo,* Me., 327 A.2d 613 (1974). The Court read all the elements of the offense, including that the property must be taken from the victim "by force or violence or by putting in fear", language which may readily be understood by those untutored in the law. The Court then instructed that the prosecution had the burden of proof "with reference to every element of the crime . . . ." The jury had heard Martin Coyne testify that the defendant, his hand concealed by a newspaper, had pointed his outstretched arm at the witness, announced "this is a stick-up" and instructed him to "clean out the cash drawer." They also heard the witness testify that these acts by the defendant "scared" him. The defendant did not contest the fact that a robbery occurred but merely claimed that, having been elsewhere at the time, he did not commit it. We think that the jurors, aided by their common understanding and without further elaboration by the Court, could, if they believed Martin Coyne, have concluded from his testimony that the defendant violated the prohibitions of 17 M.R.S.A. § 3401 by stealing property by placing the victim in fear.

The standard for determining manifest error in these circumstances is whether there exists "a reasonable possibility that a complete instruction . . . would have resulted in a different verdict." *State v. McKeough,* Me., 300 A.2d 755, 761 (1973). We are satisfied that the Court's failure to give a more elaborated instruction was not reversible error.

The entries will be:

Appeal from judgment of conviction denied.

---

3.  " . . . No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . . " M.R.Crim.P., Rule 30(b).

Appeal from denial of motion for new trial based upon newly discovered evidence denied.

All Justices concurring.