STATE of Maine

v.

Paul NASON.

Supreme Judicial Court of Maine.

March 9, 1978.

Henry N. Berry III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Annee Tara, Asst. Dist. Atty., Portland, for plaintiff.

Robert N. Walker, Yarmouth (orally), for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Active Retired Justice.[1]

On February 5, 1975 the defendant, Paul Nason, upon jury trial in the Superior Court in and for the County of Cumberland, was found guilty of receiving and aiding in concealing on August 15, 1974 certain stolen property pursuant to 17 M.R.S.A., § 3551.[2] His present counsel, who was not counsel at trial, has briefed and argued for our consideration a single issue on appeal, to wit:

> Whether it was reversible error for the Court below to have permitted the State to introduce in evidence an inconsistent written statement of a State's witness without giving the jury any instruction respecting the limited purpose for which such evidence is admissible, i. e. for impeachment purposes only.

We deny the defendant's appeal.

One Thomas E. Colby, on August 17, 1974, gave Officer Donald C. Forbes of the Gorham Police Department a written statement which in pertinent part reads as follows:

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. 17 M.R.S.A., § 3551 was repealed by Public Laws, 1975, c. 499, § 19, effective May 1, 1976, and replaced by 17-A M.R.S.A., § 359.

"The police showed up [at the Tarvers residence] so Paul [meaning the defendant Paul Nason] and I grabbed the guns headed down over the stairs. We heard the police talking, *Paul dropped his gun at the bottom of the stairs*, I went back upstairs, wiped the guns clean and hid them under the mattress. Then the police came upstairs and found them." (Emphasis supplied)

At trial Colby testified that he was the one that had taken the gun to the bottom of the stairs and that Paul Nason had nothing to do with the stolen goods. Declared a hostile witness by the Court, Colby was examined by the State in relation to the reference inconsistent statement. Although in the handwriting of the officer, Nason admitted making the statement and reading the transcription before signing it. He testified that his written assertion given to Officer Forbes to the effect that "Paul dropped his gun at the bottom of the stairs," was inaccurate and untrue.

■ Trial counsel not only did not object to the admission in evidence of Colby's inconsistent statement, but affirmatively stated that he had no objection. Neither did he raise any objection to the Justice's charge which did not specifically instruct the jury respecting the limited consideration to be given such impeaching evidence. In the face of such non-compliance with Rule 51, M.R.Crim.P. which mandates that a party make known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor, and with Rule 30(b), which states that no party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection, we may review the instant point of appeal only within the context of obvious error affecting the substantial rights of the accused. Rule 52(b), M.R.Crim.P. In other words, to constitute reversible error, the trial court's failure to instruct the jury respecting the limited purpose for which Colby's inconsist-

ent statement was being admitted in evidence must be so highly prejudicial and so tainted the proceeding as virtually to deprive the defendant of a fair trial and lead to a manifest miscarriage of justice. *State v. Cote*, Me., 362 A.2d 174 (1976); *State v. Gagne*, Me., 349 A.2d 193 (1975); *State v. Brown*, Me., 302 A.2d 322 (1973); *State v. Small*, Me., 267 A.2d 912 (1970); see also *State v. Sargent*, Me., 361 A.2d 248 (1976).

■ In *State v. Fournier*, Me., 267 A.2d 638 (1970), this Court sanctioned the right of the State to cross-examine its own witness on a finding of hostility of the witness respecting prior statements made by him in contradiction of his testimony in court. Such prior contradictory statements, under long established rule, are admissible in evidence for the purpose of impeaching the witness' credibility. *State v. Blake*, 25 Me. 350 (1845); *State v. Pullen*, Me., 266 A.2d 222, 225 (1970); *State v. Pinnette*, Me., 340 A.2d 17, 22 (1975); *State v. Myers*, Me., 345 A.2d 500, 502 (1975).

As stated in *State v. Warner*, Me., 237 A.2d 150, at 169 (1967):

"It is a well recognized exception to the hearsay rule that when a witness has testified to material facts, any acts or declarations of his, appearing inconsistent, are competent impeachment," citing *State v. Hume*, 146 Me. 129, 142, 78 A.2d 496 (1951); *State v. Mosley*, 133 Me. 168, 175 A. 307 (1934).

The same rule is recognized where the inconsistent unsworn statements are in written form. *Robinson v. Heard*, 15 Me. 296, 303 (1839); *State v. Robbins*, Me., 318 A.2d 51, 60 (1974).

In *Fournier*, this Court went further and, in accord with the traditional or orthodox rule as it is commonly called, stated that such prior inconsistent statements of a State's witness are admissible in evidence *solely* for impeachment purposes and "are not to be treated as having any substantive or independent testimonial value." Such had been the long accepted doctrine in Maine. *State v. Mosley*, 133 Me. 168, 173, 175 A. 307 (1934); *Kolasen v. Great North-*

*ern Paper Co.*, 115 Me. 367, 368–369, 98 A. 1029 (1916); *Barnes v. Rumford*, 96 Me. 315, 323, 52 A. 844 (1902). See also *State v. Franco*, Me., 365 A.2d 807 (1976) at note 5 on page 812.

Additionally, this Court in *Fournier* ruled that the failure of the trial court to give a contemporaneous instruction to the jury, at the time of admission in evidence of the impeaching contradictory statement, to the effect that such evidence may be considered solely for the purpose of discrediting the witness and could not be used as substantive or independent proof of the truth of the matter stated therein, was not reversible error, where such an instruction limiting the scope of such evidence was conveyed to the jury in the justice's charge, although the Court viewed as the better practice the giving of both, the contemporaneous instruction when the evidence is admitted and a repeat instruction in respect thereto in the general charge.[3]

Thus, the generally accepted doctrine, as followed in *Fournier*, was the applicable rule at the time of the defendant's trial. Such represents the great weight of authority. See 133 A.L.R. 1455 and, for more recent pronouncements thereon, the following may be consulted: *United States v. Palacios*, 556 F.2d 1359 (5th Cir. 1977); *Smith v. Woronoff*, 75 Mich.App. 24, 254 N.W.2d 637 (1977); *State v. Villafane*, 171 Conn. 644, 372 A.2d 82 (1977); *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976); *Patterson v. State*, 275 Md. 563, 572–573, 342 A.2d 660, 665 (1975).

It is true that a more liberal view is evolving and that some authorities now look upon such inconsistent unsworn prior statements as substantive evidence in proof of the out-of-court assertions, if the declarant is present and testifies in the case, subject-

ing himself to cross-examination. The theory is that, although the prior contradictory statement was not given under oath and subject to the penalties of perjury, the witness at trial, when confronted with his previous inconsistent statement, must then affirm or deny the truth of such statement, or give a qualifying explanation, and this under the penalty of perjury. The test of cross-examination of the witness as to both, his present testimony and his previous inconsistent statement, is viewed as an adequate procedural mechanism to aid the jury in its truth searching process respecting contradictory versions of a factual matter. But this is a minority view, favored, however, by Wigmore on Evidence (Chadbourn Revision) § 1018, McCormick on Evidence, 2d Ed., § 251, The Uniform Rules of Evidence, Rule 63(1) and The Model Code of Evidence, Rule 503(b). See *Patterson v. State*, 324 N.E.2d 482 (Ind.1975); *Carter v. State*, 361 N.E.2d 1208 (Ind.1977); *Gelhaar v. State*, 41 Wis.2d 230, 163 N.W.2d 609 (1969); *Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969); *State v. Jolly*, 112 Mont. 352, 355, 116 P.2d 686 (1941); *Di Carlo v. United States*, 6 F.2d 364, 368 (2nd Cir. 1925).

We need not consider at this time whether we should or should not repudiate the traditional rule of *Fournier* in the area where Rule 801(d) of M.R.Evid. has not modified the same.

Our immediate problem is to determine whether or not the defendant received a fundamentally fair trial in view of the fact that the Colby written unsworn inconsistent statement was received in evidence without any limiting instruction being given the jury respecting the use to be made of such evidence. Our appellate review must be so postured by reason of the fact the defend-

**3.** We note, however, that, since the instant trial, the rule in *Fournier* has been modified in cases in which the prior inconsistent statement was given under oath subject to the penalty of perjury. Indeed, Rule 801(d) of the Maine Rules of Evidence, effective February 2, 1976, provides as follows:

"A statement is not hearsay if:
(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is

subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition . . . .."

Since the Colby inconsistent written statement was not given under oath, Rule 801(d), M.R.Evid., would not apply even if it had been in effect at the time of trial.

ant requested no such limiting instruction at anytime, nor did he object to the court's failure to so instruct. In fact, when the evidence came in, his trial counsel stated that he had no objection.

We must have in mind that the Colby out-of-court statement was hearsay. Indeed, hearsay evidence is testimonial or written evidence of a statement made out of court, but proffered at trial for the purpose of proving the truth of matters asserted therein. See McCormick on Evidence, (1954 Ed.) § 225; *Harvey v. State*, 256 Ind. 473 at 476, 269 N.E.2d 759 at 760 (1971); *Daniels v. Bloomquist*, 258 Iowa 301, 138 N.W.2d 868, 875 (1965).

Furthermore, we must take into consideration the fact that this prior inconsistent statement, albeit hearsay because made by the declarant while not under oath, was acknowledged by him as a witness at trial as his then voluntary statement.

Additionally, we must view the reference prior contradictory statement in the light of its inherent testimonial value under other applicable evidentiary rules which do not limit its admissibility to impeachment purposes only. See *Joyner v. United States*, 547 F.2d 1199 (4th Cir. 1977).

In *Watkins Co. v. Brown and McPherson*, 134 Me. 473, 188 A. 212, this Court said that

"[e]vidence, even though legally inadmissible, received without objection, is regarded as in the case by consent, and, *if relevant*, must be considered by the trier of the facts." (Emphasis provided)

Accord: *Warren v. Waterville Urban Renewal Authority*, Me., 235 A.2d 295 (1967). This rule applies to evidence admissible only for a limited purpose, but received in evidence without qualification; if relevant, such "consent" evidence may be considered by the trier of facts and given its natural and logical probative effect, even beyond the limited purpose to which it would necessarily have been restricted if the court had been requested to do so. *Goldthwaite v. Sheraton Restaurant*, 154 Me. 214, 145 A.2d 362 (1958).

In *Goldthwaite*, the hearsay evidence consisted of abstracts from medical treatises expounding medical opinions which could not readily be tested by cross-examination of the author who was not available as a witness. But this Court recognized the intrinsic probative worth of such evidence in that it often has very real and practical evidentiary value.

Thus, this Court in *Goldthwaite* held that "consent" evidence may properly be given weight, even though hearsay, as corroborative of other competent legal evidence, but will not alone support a verdict or finding.

In the instant case, the Colby prior inconsistent statement had very real and practical evidentiary value, not only in its effect upon the credibility of Colby as a witness at trial, but also in relation to the truth of the statement itself. The declarant was subject to cross-examination; he acknowledged that it was his voluntary statement, although denying its truthfulness; the statement was in writing and was given within a short time following the event to which it related. All these factual circumstances enhanced the trustworthiness of the hearsay statement.

Colby's inconsistent statement was relevant and material. It had probative value, in and of itself, respecting the critical issues in the case, such as the exercise of control by the defendant over the stolen property and his subjective knowledge that the property was in fact stolen property.

Legal relevancy, we said in *Towle v. Aube*, Me., 310 A.2d 259, at 265 (1973), depends upon the legitimate tendency of the evidence to establish the controverted fact, while materiality goes to the weight of such evidence in helping to resolve the issue.

This record reveals legitimate evidence, other than Colby's prior inconsistent statement, upon which the jury was warranted in finding the defendant guilty as charged beyond a reasonable doubt. Since the jury had the right to use the hearsay evidence as corroborative of such other evidence which was sufficient to sustain the conviction, it becomes immaterial in the instant case as to

what influence such hearsay evidence played in the ultimate decision.[4]

The failure of the Court below to give a limiting instruction *sua sponte*, where no request was made therefor, was not reversible error. *United States v. Alfonso*, 552 F.2d 605 (5th Cir. 1977); *United States v. Hill*, 481 F.2d 929 (5th Cir. 1973), cert. denied, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973). The defendant received a fair trial and from this record we cannot say that there was a miscarriage of justice.

The entry will be

Appeal denied.

Judgment affirmed.

WEATHERBEE, J., sat at oral argument and participated in consultation, but died prior to the preparation of the opinion.

DELAHANTY, J., sat at argument and conference, but did not otherwise participate.

---

4. Although the issue was not raised, we note that the receipt in evidence of prior inconsistent statements, even for use as substantive evidence, where the declarant testifies and is subject to cross-examination at trial, is not in violation of the confrontation clause of the Federal Constitution. See *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).