STATE of Maine

v.

**Timothy F. FLAHERTY.**

Supreme Judicial Court of Maine.

June 25, 1975.

Henry N. Berry, III, County Atty., Peter G. Vallou, Asst. Atty. Gen., Portland,

Ernest L. Manderson, Law Student, for plaintiff.

Ranger McTeague & Higbee, P. A. by Patrick N. McTeague, G. William Higbee, Brunswick, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Defendant Timothy F. Flaherty has appealed from a judgment of conviction adjudicating him guilty of the crime of robbery and from the ruling of a Superior Court Justice denying his motion for a new trial on grounds of newly discovered evidence.

We deny the appeal.

The Cumberland County jury which decided defendant's guilt was entitled to find the following facts.

In the early morning hours of January 6, 1973 two men accosted George Record III while he was intoxicated. They made off with Record's wallet in which were his driver's license, his Bankamericard and assorted other items.

On January 7, 1973, in the evening, defendant and three colleagues were patrons at the Portland Jetport Terrace Restaurant. When he paid for a round of drinks, defendant tendered Record's Bankamericard and signed credit slips by using Record's name.

On January 12, 1973 Mrs. Diane L'Heureux, an employee of the National Car Rental Agency at the Portland Jetport, received a telephone call from a man wishing to rent a car. The caller was anxious that all rental arrangements be made in advance and proposed to pay for the rental with a Bankamericard bearing the name "George Record III." When Mrs.

L'Heureux sought authorization to honor the card, she was informed that "the credit card was no good" and "to make an arrest." She notified the airport security personnel and the Portland police.

Several hours later defendant approached the car rental counter at the Portland Jetport and identified himself as the man who had phoned concerning rental of a car. He presented Mr. Record's credit card and driver's license.

While the rental forms were being completed, an investigator for the Maine National Bank and an airport security guard approached defendant and asked him to be seated on a bench in the sales area. They informed defendant that the police had been summoned "to take him in." Defendant then arose and fled.

## 1

■ Defendant's first claim on appeal is that the presiding Justice erred in denying defendant's motion for judgment of acquittal filed at the conclusion of all the evidence. Defendant's argument is that his conviction rested on an inference arising from defendant's possession of articles stolen from George Record III, and the evidence was inadequate to establish beyond a reasonable doubt the underlying facts necessary to allow such inference to be validly operative. Insufficiency is asserted as to the proof of (1) exclusive possession by defendant of Record's stolen credit card; (2) the nature of the articles involved; and (3) the "recency" of defendant's possession of stolen goods.

Defendant asserts that, as a matter of law, his possession could not have been "exclusive" because he was acting as part of a group. The contention is frivolous. By the testimony of the restaurant bartender it was defendant who came forward alone, identified himself as George Record, presented the Bankamericard and personal-

ly signed the credit slip in Mr. Record's name. This constitutes the special dominion, control and assertion of a right of disposal over the stolen item sufficient to justify a finding that defendant had an exclusive possession. *State v. Barrett,* Me., 256 A.2d 666 (1969).

We find without merit defendant's second claim that the stolen credit card and license are items so "small" that they are easily delivered from one person to another and, therefore, should not qualify as the kind of goods which may bring the "possession of stolen goods" inference into play.

An individual's credit card and driver's license are uniquely and distinctively personal. For this reason, when they are in the possession of a person other than the true owner, such possessor will rarely be unaware that another person is the true owner who alone has the right to use the items. Thus, that a person possesses and uses recently stolen credit cards or licenses tends to suggest more cogently than does a possession and use of stolen goods which are fungible and without clearly identifiable ownership that the user has stolen the items.

Defendant's third point as to the insufficiency of the evidence is that since six days had intervened between the date of the theft and defendant's presentation of Mr. Record's license and credit card for the purpose of renting an automobile, defendant's possession of these items was not "recent." Neither precedent nor sound reason supports this contention. In *State v. Collamore,* Me., 287 A.2d 123 (1972), for example, eight days had passed between the theft and the discovery of the defendant's possession; in *State v. Lizotte,* Me., 230 A.2d 414 (1967), five days. Accordingly, a six day interval between the theft of the goods here at issue and defendant's possession of them would not, as a matter of law, preclude a jury determi-

nation that defendant's possession was "recent" relative to the theft.

The evidence was sufficient to support the jury's verdict that defendant participated in the larceny which was a constituent part of the robbery of George Record III, as otherwise proved to have been committed, and, therefore, was a participant in the robbery.

*2*

The presiding Justice correctly denied defendant's motion for a new trial on the grounds of newly discovered evidence.

At the hearing on the motion defendant presented witnesses who testified as to various statements which a friend of the defendant, one Steven Pooler, had made to them subsequent to defendant's conviction. The substance of the statements was that Pooler had participated in robbing Record, and it was Pooler who gave the credit card to defendant.

Another witness, Christene Gilbert, testified that Pooler had stated to her that he, Pooler,

" . . . would like to help Tim and he felt bad because he was in trouble. And he told me that he did the robbery, that he gave Tim the credit cards."

Miss Gilbert's testimony was silent as to whether defendant had participated with Pooler in the robbery of Record.

Another witness, Wayne Dow, testified that Pooler

"told me that Mr. Flaherty did not belong in jail for this crime that he had been convicted of. Then he told me that he got five to ten for something he didn't even do. You know, I was a little bit curious, you know. I said, 'Well,

what do you mean he didn't do it?' He says, 'Well,' he says, 'I was the one that gave Mr. Flaherty the cards.'"

Defendant testified as to a conversation occurring at the County jail in defendant's presence, between Pooler and a Father Morgan. In defendant's words:

"Steven told Father Morgan that he in fact gave me the credit cards that I was convicted on for the charge of robbery."

Defendant testified further that Pooler

"said that he got the cards from Thomas Welch and gave them in turn to me."[1]

Steven Pooler was subpoenaed as a witness at the hearing on the motion for new trial and when placed on the witness stand repeatedly invoked his privilege against self incrimination to refuse to answer questions about his, or defendant's, role in the "Record" robbery.

The presiding Justice correctly denied defendant's motion for a new trial by an analysis which states the law with accuracy and incisiveness and which we adopt.

"While it cannot be denied that the extra-judicial statements of Stephen Pooler were made after the defendant's trial, and therefore, discovered only after that trial, they are merely cumulative of evidence which was in the possession of the defendant at the time of his trial. If the extra-judicial declarations of Stephen Pooler are to be believed, then the defendant *at the time of his trial* was aware that he had come into possession of the recently stolen property by having received it from Stephen Pooler. . . . He elected not to make the 'facts' known to the jury. The defendant, having made a tactical decision not to explain his possession of the recently stolen property to the jury, cannot now seek a new trial on the grounds that he

[1]. The various statements attributed to Pooler do not exculpate defendant. That Pooler participated in the robbery of George Record fails to establish that defendant was not a participant. That Pooler gave the "credit cards" to defendant does not overcome the inference permissible from defendant's possession of Record's driver's license.

has discovered evidence which is corroborative of evidence which was in his possession at the time of trial and which he elected not to present. A defendant cannot be permitted to gamble on an acquittal in reliance upon the lack of persuasiveness of the inference arising from his possession of recently stolen property and then when he loses seek a new trial for the purpose of explaining that possession. To allow that kind of gamesmanship in the judicial process is to assure that every criminal case will be tried at least twice. A defendant is entitled to one fair trial at which he has to make a tactical decision as to whether he desires to rely on the lack of convincing force of the state's case or whether he desires to offer evidence in rebuttal of the state's case. . . .."

The entry is:

*Appeal denied.*

All Justices concurring.