**UNITED STATES of America, Appellee,**

v.

**Richard PISARI, Defendant, Appellant.**

**No. 79–1079.**

United States Court of Appeals,
First Circuit.

Submitted on Rehearing Oct. 10, 1980.

Decided Jan. 7, 1981.

Richard J. Vita and Robert J. Granich, Boston, Mass., on brief on rehearing for appellant.

Edward F. Harrington, U. S. Atty., and Paul F. Healy, Jr., Asst. U. S. Atty., Boston, Mass., on brief on rehearing for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

On June 5, 1980 we issued our opinion in this case, reversing appellant's conviction and holding that rebuttal testimony of a government witness, Coombs, was improperly admitted, being admissible neither as independent proof of appellant's identity, Fed.R.Evid. 404(b), nor as impeachment by prior inconsistent statement. On August 4 we granted the government's petition for rehearing and withdrew our opinion. After receiving and considering new briefs from the parties, we arrive at the same result, a reversal, via a different analysis.

After a trial by jury, appellant was found guilty of committing a robbery by knife on February 24, 1978, of a postal installation located in the Lambert Pharmacy in Medford, Massachusetts, in violation of 18 U.S.C. § 2114.[1]

Appellant claims that the district court's admission of rebuttal testimony that appellant had told an undercover agent that he had committed a prior robbery by the use of a knife was prejudicial error. He also claims a deprivation of his Sixth Amendment right to effective assistance of counsel.

---

1. "§ 2114. Mail, money or other property of United States

Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

The government's case consisted principally of the testimony of William Meehan and Rose Puccia, employees of the pharmacy and victims of the robbery. Their testimony and that of the Medford police officer who assisted them following the robbery were offered to establish the identity of the defendant. Meehan testified that he first saw the defendant when he waited on him at the cigarette counter moments before the robbery. Subsequently, another man asked Meehan for assistance and then drew a gun, directing him to fill a sack with certain named prescription drugs. At the same time, according to Mrs. Puccia, defendant went to the Post Office counter, where she was waiting on customers, held a knife to her side and ordered her to give him the contents of the case drawer.

That same evening, Meehan and Puccia were separately shown several hundred photographs from police books. They were unable to make an identification. That night, at the Medford Police Department, they were each shown about three hundred more photographs and were unable to positively identify the man who robbed the Post Office, nor could they agree on a composite drawing.

Two days later, at the Somerville Police Department, Meehan picked out the defendant from among approximately two hundred photographs as one of the men who committed the robbery. Later in the evening, Mrs. Puccia was shown about fifteen individual photographs, one of which she positively identified as the person who held a knife to her, defendant Pisari.

The following day they both went to Malden District Court at the request of the police, who told them they had arrested Pisari in connection with the robbery. They were told to wait in the corridor and indicate independently of each other if he emerged from the courtroom, which he would do if he made bail. Both witnesses identified defendant as he left the courtroom approximately two hours later, after having observed a constant flow of people in and out. The in-court identification of the defendant was similarly positive, and Mrs. Puccia testified that she had no doubt whatsoever that defendant was the robber.

At the conclusion of the government's case, a bench conference was held, in which the government urged that it be allowed to call an undercover agent of the Bureau of Alcohol, Tobacco, and Firearms, Coombs, who would testify that defendant, three months before the robbery, had told him that he had robbed a drug dealer, using a knife. The government's theory, articulated in a memorandum of law for the court, was that the use of a knife in a prior crime was probative of appellant's identity under Rule 404(b).[2] The district court and counsel engaged in the following colloquy:

"MR. HEALY [prosecutor]: Essentially, that is my case. I submitted a memo . . .

THE COURT: I read the memo and I would say, in the interest of quitting while you are ahead, at the present time I will confine you to your case.

I don't know what George has for a defense. You might try and get it in rebuttal, if it gets to that point.

MR. HIGGINS [counsel for defendant]: Mine is strictly alibi, your Honor.

THE COURT: This business—I am sure you have a copy (indicating).

MR. HIGGINS: I am going to be eating large chunks of the rug, if he starts with that stuff.

THE COURT: It is arguably admissible, if you read Heatherton [sic] and Wright cases [*United States v. Eatherton*, 519 F.2d 603 (1st Cir. 1975); *United States v. Wright*, 573 F.2d 681 (1st Cir. 1978)], it is arguably admissible. I won't say I won't let it come in, but, for your direct case, I don't think you need it at the moment.

---

**2.** "Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions, Other Crimes

(b) *Other crimes, wrongs, or acts.*

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

You have a pretty strong case and I suggest you quit while you are ahead.

At the end of his case, if you want to take a shot at it and offer it, we will see about it then."

Defendant then presented his case, testifying that he had been elsewhere at the time of the robbery. In the course of defendant's cross-examination by the government, the relevant questions and answers were as follows:

"Q. In late 1977, did you commit any robberies by knife?

A. In 1977? By knife? Did I commit any robberies?

MR. HIGGINS: I object to that, your Honor.

THE WITNESS: No.

THE COURT: He said no. All right.

THE WITNESS: No. I didn't, wait a minute, 1977? Did I commit any robberies?

Q. Late 1977, any robberies by knife?

A. I—no. I have not committed any robberies by knife in 1977."

After the defendant presented his case, the government sought once again to introduce agent Coombs' testimony. The following colloquy tells what happened.

"MR. HEALY: There were certain matters that I had written a memorandum on and I want to put out in my case in chief and at this time there is one in particular and that is my recollection of the defendant's testimony was that he denied—

THE COURT: Conducting a robbery in late 1977 by the use of a knife, and you have a witness that is going to say he admitted that and that is admissible on the limited issue of his credibility.

MR. HEALY: Yes.

MR. HIGGINS: Your Honor, please note my objection. It will be my position that that is so prejudicial as to warrant its exclusion; and, further, that matter was not raised on direct.

THE COURT: It was raised on cross-examination and the defendant's credibility is critical in this case where it is an alibi defense and there are Court of Appeals opinions indicating that when a defendant's testimony is critical that cross-examination is permissible on the issue of credibility.

I will take it with a limiting instruction that I will give to the jury that it is admissible on the defendant's credibility.

I will, of course, note your objection."

The parties, the district court, and this court have been mistaken in various ways in their analysis of the admissibility of agent Coombs' statement. The district court, as noted, admitted the evidence as proof of a prior inconsistent statement relevant to the credibility of the defendant. The government defends the district court's admission of the evidence for impeachment purposes, or as a proper resort to Rule 404(b), the testimony tending to prove that defendant had committed an earlier "strikingly similar" crime and therefore was the person who committed the crime at bar. Appellant has attacked the testimony as constituting extrinsic evidence of specific conduct, in violation of Rule 608(b). He opposes the application of Rule 404(b), arguing that the testimony was not admitted on this basis and that in any event the evidence of misconduct was neither direct nor competent. As for the impeachment ground, appellant argues that defendant's denial of having engaged in robbery by knife is not necessarily inconsistent with his having falsely told the undercover agent that he had committed such an act. In our earlier opinion, we rejected both proffered grounds for admissibility on the rationale now understandably defended on rehearing by appellant.

In our rethinking of the admissibility of the Coombs testimony, we consider first the impeachment ground specifically relied on by the district court. The government has suggested the proper starting point for analysis by acknowledging that a denial on cross-examination which relates to a collateral matter cannot be disputed by extrinsic evidence, citing McCormick, Law of Evidence, ch. 56, § 36 at 70 (2d ed. 1972). *See also* Saltzburg and Redden, Federal Rules of Evidence Manual, 390 (2d ed. 1977). As

one treatise summarizes the test at common law,

> "The test for collateralness proposed by Wigmore and endorsed by a number of federal courts [footnote omitted] is
>
> > Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction? (Footnote omitted.)
>
> \*   \*   \*   \*   \*   \*
>
> In other words, the [prior inconsistent] statement may be proved if it relates to a matter which the examiner could have proven even if the witness had said nothing on the subject. (Footnote omitted.)" [3]

3 Weinstein's Evidence, ¶ 607[06], at 607–69, –70 (1978).

While at common law the test for collateralness was frequently mechanical, we are advised by commentators that: "The better approach—and one in accord with the structure of the federal rules—would be to eliminate mechanical application of the 'collateral' test in favor of the balancing approach mandated by Rule 403. Evidence at which the collateral test is primarily directed, which is relevant solely because it suggests that the witness may have lied about something in the past would generally be excluded because of its low probative value and its tendency to prejudice the jury. Evidence of higher probative value would be assessed in terms of its impact on the jury in light of the particular circumstances presented." *Id.* at 607–71 to –72.

The government assumes that the issue of collateralness is easily hurdled, because "[t]he identity of the perpetrator of a crime is always a relevant and material issue". That is, the government contends that the prior robbery of a drug dealer by appellant, having a knife as his weapon, is so "strikingly similar" to the robbery of the postal installation in the pharmacy presented in this case that it is probative that the same person, appellant, committed both crimes.

We think the government has underestimated the similarity necessary to justify, under Rule 404(b), the admission of evidence of other crimes to prove identity. Weinstein quotes McCormick as stating that evidence may be admitted:

> "To prove other like crimes by the accused so nearly identical in method as to ear-mark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.* (Emphasis in original.) *Id.* at 404–92, quoting McCormick, Evidence § 157 (1954).

Then the treatise expands on the theme (omitting footnotes):

> "There are many instances when details of the crime show an individuality that, if repeated, are [sic] highly probative of the conclusion that they were committed by the same person. While not rising to the same certainty of chisel marks or rifling marks, they are no different as identifying marks than the fact that the defendant limped or had a scar over his eye. If, for example, the same or a similar false name is used, the check is almost the same amount, the same kind of purchase is made in the same kind of store and the approach is the same, there is good reason to suspect identity. Criminals are not generally highly intelligent and creative artists. They tend easily to fall into detailed patterns serving as 'prints' of their crimes. Proof of the commission of the same type of crime is not sufficient on this theory unless the particular *modus operandi* is analyzed. A defendant cannot be identified as the perpetrator of the charged act simply because he has at other times committed

---

**3.** The footnote reads in part:

> "Cf. *Stevens v. Consolidated Mutual Insurance Co.*, 352 F.2d 41, 44 (1st Cir. 1965) (evidence of subsequent repairs not rendered admissible by asking witness if he made repairs and after denial showing he had lied; 'it is

entirely improper to seek to make a witness testify upon an incompetent subject in the purported hope of creating a contradiction which might, in turn, permit an attack on his credibility.')."

the same commonplace variety of criminal act except by reference to the forbidden inference of propensity. The question for the court is whether the characteristics relied upon are sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *Id.* at 404–92 to –94.

Our own precedents allowing "other crimes as signature" evidence have involved the conjunction of several identifying characteristics or the presence of some highly distinctive quality. In *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975), a gun and three ski masks taken from defendant corresponded in character and number to accessories used in a robbery a few days earlier. In *United States v. Barrett*, 539 F.2d 244, 248 (1st Cir. 1976), testimony that defendant possessed expertise in the operation of burglar alarms was admissible where, in the case at bar, a burglary had been facilitated by bypassing an alarm, "so distinctive a feature of the stamp burglary" that defendant's expertise "reinforced the evidence that linked him to the burglary."

In contrast, the only factor common to the postal installation burglary and the robbery about which agent Coombs quoted appellant was a knife. We have no idea whether the knives used on these occasions were either similar or distinctive. We have no clear idea of the propinquity of the events in time. In one case a store is the target of the crime; in the other, an individual is the target. In one case, there were two robbers; in the other, so far as we know, one. In this case the objects taken were drugs and money; we do not know whether drugs or money were taken in the other robbery. An instructive case, considerably closer than the instant one, is *United States v. Myers*, 550 F.2d 1036, 1046 (5th Cir. 1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), where the court gave this thumbnail summary: "An early afternoon robbery of an outlying bank situated on a highway, by revolver-armed robbers wearing gloves and stocking masks, and carrying a bag for the loot, is not such an unusual crime that it tends to prove that one of the two individuals involved must have been the single bandit in a similar prior robbery." *See also United States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978).

■ We are, in short, unable to make the determination that the elements of the offense revealed in agent Coombs' testimony and in the case at bar are so distinctive as to give rise to an inference that the same person was involved in both. The single fact that in committing a robbery, one invokes the threat of using a knife falls far short of a sufficient signature or trademark upon which to posit an inference of identity. We therefore conclude that, since agent Coombs' testimony, not being justified as evidence bearing on the identity of appellant, was addressed only to a collateral matter, it was improperly admitted as impeachment evidence. Our analysis also necessarily rules out any invocation of Rule 404(b) as an independent basis of admissibility. No other basis has been suggested, nor does any commend itself to us.

■ We now turn to the question of harmless error. The defense in this case was alibi. While the government had a strong case based on identification testimony, the trial judge permitted the improper evidence on the basis of the critical importance of defendant's credibility. Coming as it did at the close of all the evidence, Coombs' testimony doubtless had the intended effect of impairing defendant's credibility. We are unable to say "with fair assurance . . . that the judgment was not substantially swayed by the error . . . ." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). We agree with the Fourth Circuit's approach in a case similar to ours.

"When in the prosecution of a defendant, counsel for the government introduces extrinsic evidence of defendant's misconduct, the only purpose of which is to impeach the defendant's credibility and prejudice the jury against him, the government, on appeal, will not ordinarily contend that the methods which were

**860**

used did not have the effect which they were obviously intended to have." *United States v. Ling*, 4 Cir., 581 F.2d 1118 at 1122.

Since we cannot say with certainty that the error was harmless, we must reverse.

In light of our holding, we do not reach the question of effective assistance of counsel. Our reading of the record, however, indicates that defense counsel's conduct of the trial was more than competent.

*Reversed and remanded.*