STATE of Maine

v.

James BROWN.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1988.
Decided Dec. 14, 1988.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Michael E. Saucier (orally), Hunt, Thompson & Bowie, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

The defendant, James Brown, appeals from a judgment of the Superior Court, (York County, *Brodrick, J.*), entered on a jury verdict finding him guilty of murder in violation of 17–A.M.R.S.A. § 201 (1983). Brown contends that 1) it was obvious error to admit certain evidence at trial, 2) the trial court erred in denying his motion for a new trial, and 3) the evidence was insufficient to support the verdict of the jury. We affirm the judgment.

The jury would have been warranted in finding, *inter alia,* the following facts: At approximately 8:45 p.m. on March 10, 1986, Dora McFarland, an 88–year–old widow who lived alone in Sanford was found in her home suffering from injuries to her head and face from which she died later that evening. McFarland habitually locked all her doors and windows and did not let anyone into her house whom she did not know. She also had the habit, known by most of her relatives, of hiding money in various places in her home.

At the time of the murder, Brown, McFarland's great-nephew, was residing at the home of Shirley Mitchell, McFarland's next door neighbor. He had arrived at the Mitchell home that evening at approximately 5:30 p.m. At around 7:30 p.m., Brown told the Mitchells he was leaving to buy cigarettes and soda. According to the two employees of the store, where Brown told police he went, Brown was not at the store that evening. Brown returned to the Mitchell residence at approximately 8:00 p.m. At approximately 8:35 p.m., after receiving a telephone inquiry about McFarland's well-being, Mitchell asked Brown to go next door and check on McFarland. Brown went next door and reported that the lights were on in the McFarland house but no one had answered his knock at the door. He then went upstairs and continued playing cards and watching television. A few minutes later, Scott McFarland, the victim's grandson, appeared at the Mitchell home and advised them he had just entered his grandmother's home, using a key in his possession, and discovered her in a rocking chair, bloody and beaten. On their arrival, the police cordoned off the house allowing only the police to enter. It was determined by the police there had been no forced entry to the premises.

The day after the murder, Brown described the details of the victim's injuries and of the crime to a news reporter. At this time, the police had not released any information about the crime to the public or allowed the family members to enter the victim's home. Brown was later incarcerated at the York County jail on an unrelated matter, which was eventually dismissed. Steven Myers and Richard Merritt were two of Brown's fellow inmates during his incarceration. While incarcerated Brown made inculpatory statements to both Myers and Merritt.

The jury found Brown guilty of the charged murder, and Brown appeals.

### I.

Brown first argues that the trial justice erred in admitting five different statements in evidence. Initially, we note that at his trial Brown did not properly preserve any of his present claims of error. Accordingly, we review the challenged statements only for obvious error affecting his substantial rights. *See State v. Brunette*, 501 A.2d 419, 423 (Me.1985) and M.R.Crim.P. 52(b).

■ The first three evidentiary objections raised by Brown stem from evidence offered by the State at trial for the purpose of the impeachment of Merritt. *See* M.R. Evid. 607, 613. This evidence consisted of prior inconsistent statements made by Merritt to the investigating officers detailing Merritt's conversations with and observations of Brown during their incarceration. Because these statements were introduced, not to prove the truth of the matter asserted, but for the limited purpose of attacking the credibility of Merritt, the statements were admissible. *See, e.g., State v. Liberty*, 478 A.2d 1112, 1116 (Me.1984); *State v. Nason*, 383 A.2d 35, 36 (Me.1978); *State v. St. Germain*, 369 A.2d 631, 632 (Me.1977).

Brown argues, however, that even though admissible, the testimony should have been excluded because the danger of unfair prejudice to him substantially outweighed any probative value of the evidence. Under M.R.Evid. 403, this determination requires a balancing process by the trial court in which it is allowed broad discretion. Our review of this record discloses that the trial court did not abuse its discretion by admitting the testimony. *State v. Williams*, 395 A.2d 1158, 1165, 1166 (Me.1978).

■ Over Brown's general objection, a Sanford police officer testified that the only time he saw Brown walking, rather than driving an automobile, was when Brown was told by police not to drive because he was too intoxicated. When the trial court overrules a general objection to the admission of certain evidence, nothing is preserved for review unless it clearly appears that the evidence was inadmissible for any purpose. *State v. Kelley*, 357 A.2d

890, 894 (Me.1976). Thus, Brown's general objection did not properly preserve this issue for appellate review, and accordingly, we also review the admission of this testimony for obvious error.

■ Although M.R.Evid. 404(b) provides that evidence of other crimes or wrongs is not admissible to prove the character of a person, the rule does not exclude evidence when offered for another purpose, such as opportunity. M.R.Evid. 404(b); *see e.g., State v. Whiting*, 538 A.2d 300 (Me.1988); *State v. Works*, 537 A.2d 221 (Me.1988). Here, the evidence was introduced not to show Brown's character, but to demonstrate that Brown had a car, that it was his habit to use that car in getting around town, and thus he was likely to have used his automobile on the night of the murder. Although the testimony was unfavorable to Brown, the evidence was relevant and probative on the issue of opportunity. Weighing these factors, we conclude that the admission of the testimony was not so highly prejudicial as to rise to the level of obvious error, and the court properly exercised its discretion in the admission of the evidence. *State v. Tellier*, 526 A.2d 941, 945 (Me.1987); M.R.Evid. 403.

■ Finally, Brown challenges the admission of the testimony of Steven Myers, one of the key witnesses for the prosecution. Myers testified that, while the two were incarcerated, Brown said he would, when released, post bail for Myers or assist him in an escape attempt; and that on his failure to do so, Myers was angry.

Here again, the testimony was not introduced to show the defendant's character and that he acted in conformity therewith. M.R.Evid. 404(b). On the contrary, this testimony tended to portray the close relationship between Myers and Brown. It was thus admissible to reinforce Myers' testimony that Brown admitted to Myers that Brown committed the crime. We conclude that although the testimony was unfavorable to Brown, its admission was not so prejudicial as to rise to the level of obvious error. *See State v. Waterhouse*, 513 A.2d 862 (Me.1986).

## II.

Brown further contends that the trial court erred in denying his motion for a new trial based on the alleged newly discovered evidence that Kenneth Mitchell had overheard a conversation between Brown and a police officer as to the victim's injuries prior to this information being released by the police.

In the interests of fostering an end to litigation and preserving the integrity of criminal judgments, we regard motions for new trials on the ground of newly discovered evidence with disfavor. *State v. Preston,* 521 A.2d 305, 308 (Me.1987). The evidence in support of the motion must be convincing, as there is a proper reluctance to give a defendant a second trial after he has had his day in court. *Id.* Consequently, the defendant who seeks a new trial must make all diligent efforts to introduce into evidence any existing exculpatory facts before he may be allowed to plead that there was a reasonable excuse for his failure to present that evidence. *State v. McDonough,* 350 A.2d 556, 561 (Me.1976).

In order to receive a new trial on the ground of newly discovered evidence the defendant must show that "(1) the evidence is such as will probably change the result if a new trial is ordered; (2) it has been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it is material to the issue; (5) [and] it is not merely cumulative or impeaching, unless it is clear that impeachment would have resulted in a different verdict." *State v. McDonough,* 350 A.2d at 560. We will uphold the trial court's decision on appeal unless it is clearly erroneous. *State v. Marshall,* 491 A.2d 554, 559 (Me.1985).

Brown does not challenge the trial court's finding, *inter alia,* that Brown was aware that a critical issue in the case against him was Brown's knowledge of the nature and extent of the injuries to the victim. *See State v. McDonough,* 350 A.2d 556 (Me.1976) (the defendant who seeks a new trial is required to make all diligent efforts to introduce into evidence any exist-ing exculpatory facts). At the trial Mitchell testified on behalf of Brown, and accordingly it is evident that Mitchell was available to Brown. Indeed, Brown also could have testified at his trial about his alleged conversation with the police officer in rebuttal of the State's position that Brown had knowledge unique to the perpetrator of the crime. Brown, however, did not choose to testify at his trial. In a like situation, we have previously stated that such a tactical decision estops the defendant from seeking a new trial on the ground of newly discovered evidence. *See State v. Harding,* 408 A.2d 1003 (Me.1979); *State v. Flaherty,* 340 A.2d 212 (Me.1975). The fact that Brown may not have remembered or realized the significance of the conversation is not pertinent. *See State v. Lund,* 266 A.2d 869 (Me.1970) (that defendant did not appreciate the significance of sheets with bullet holes as evidence is not material). The trial court properly denied Brown's motion for a new trial on the ground that he had failed to establish that the proposed new evidence could not have been discovered before the trial by the exercise of due diligence.

## III.

Finally, Brown argues that the evidence was insufficient to support the jury's verdict finding him guilty of the murder beyond a reasonable doubt. We will disturb a conviction only if the jury rationally could not have found beyond a reasonable doubt every element of the offense charged. *State v. Barry,* 495 A.2d 825, 826 (Me.1985). In addition to the evidence that the jury heard concerning Brown's knowledge of the victim's injuries and the search of her home prior to this information being released by the police and his inculpatory statements to Myers and Merritt, the record discloses that the jury had before it other circumstantial evidence supportive of Brown's guilt. "Circumstantial evidence, no less than direct evidence, can convince a jury of guilt beyond a reasonable doubt." *State v. Carsetti,* 536 A.2d 1121, 1123 (Me.1988). Based on all the evidence, the jury rationally could have found beyond a reasonable doubt that

Brown was guilty of the offense of the murder of Dora McFarland.

The entry is:

Judgment affirmed.

All concurring.