STATE of Maine

v.

**Ralph E. FOWLER, Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 4, 1996.

Decided May 7, 1996.

Michael E. Povich, District Attorney, Dennis E. Smith, Assistant District Attorney, Ellsworth, for the State.

Patrick C. Larson, Ferm, Collier & Larson, Ellsworth, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Defendant Ralph E. Fowler, Jr. appeals from the judgment entered in the Superior Court (Hancock County, *Silsby, J.*) on the jury verdict finding him guilty of hunting or possessing a deer during a closed season in violation of 12 M.R.S.A. §§ 7406(1) (1994) and 7457(1)(D)(1) (Supp.1995). Fowler contends, *inter alia,* that the trial court erred by failing to instruct the jury that proof of a culpable state of mind is a necessary element for a conviction of the offense, and that his right to due process of law was violated by a thirty-one month delay by the court reporter in furnishing a trial transcript for use in his appeal. We affirm the judgment.

An automobile driven by Fowler was stopped by Bar Harbor police at approximately 9:20 p.m. on November 9, 1990, after it was observed driving on Route 3 between Bar Harbor and Northeast Harbor. The car had blood on its left bumper and a dead, nine-point buck deer in its trunk. Hylie Hall, the officer who stopped the car, had overheard a radio conversation between two park rangers concerning a suspicious gunshot and automobile in the area. Minutes before Fowler's car was stopped, Acadia National Park ranger Richard Recholtz, at

home watching television, heard a gunshot outside. After turning off the lights in his house, Recholtz peered out the window and immediately noticed two vehicles, one traveling north on Route 3, the other proceeding south. Recholtz observed the second vehicle, originally heading toward Bar Harbor, slow down, turn around at the intersection outside of his home, and then proceed in the opposite direction for a short distance. The car turned around again, then pulled over to the side of the road near Recholtz's house, where it stopped for a few minutes. The car eventually drove off in the direction of Bar Harbor.

Recholtz radioed fellow park ranger Michael Blaney who, at the time, happened to be traveling in his car nearby. Soon thereafter, Blaney arrived in front of Recholtz's home and, after a brief conversation with Recholtz, proceeded on Route 3 and caught up to Fowler's vehicle, which by then had been stopped by Officer Hall. Fowler told Hall that he had not killed the deer and that he did not intend to keep it. Fowler claimed that he and his uncle, who was a passenger in the car that evening, had discovered the deer "kicking" and near death along the roadside, and were in the process of transporting the animal to the Bar Harbor police. Fowler subsequently testified that while he and his uncle were stopped on Route 3 to investigate the deer's presence, a truck traveling slowly had twice passed them.

Later that evening and during the next day, Maine Inland Fisheries and Wildlife employees investigated the area along Route 3 near Recholtz's home and located drag marks along the side of the road. The marks revealed that a carcass had been dragged from a wooded area, where blood was found, approximately twenty to thirty feet to the roadside. Despite the efforts of local police, no gun was found. A search of Fowler's auto, however, resulted in the discovery of several different types of ammunition, including a round that was consistent with the type that could have killed the deer.

Following a jury trial, Fowler was convicted of hunting or possessing a deer during a closed season in violation of 12 M.R.S.A. §§ 7406(1) and 7457(1)(D)(1).[1] Fowler's sentence of three days' imprisonment and a $1000 fine was stayed pending this appeal.

Fowler contends that the court should have instructed the jury that the State was required to prove beyond a reasonable doubt that he had a culpable state of mind when he committed the offense of hunting or possessing a deer in a closed season. Fowler argues that he could not have been found guilty of the charge unless it was proven beyond a reasonable doubt that he acted intentionally, knowingly, recklessly, or negligently with respect to each element of the alleged crime, 17-A M.R.S.A. § 34(1) (1983).

■ Because Fowler did not raise this issue at the trial, we review his contention for "obvious errors or defects affecting substantial rights...." M.R.Crim.P. 52(b).

■ In its instructions to the jury, the trial court explained the elements of the crime by stating that the jury had to find beyond a reasonable doubt that Fowler either did hunt or did possess the deer during a closed season.[2] Although Fowler is correct that the court did not instruct the jury regarding any State burden to prove his intent

---

1. 12 M.R.S.A. § 7406(1) (1994) provides:
   **Closed season violation.** A person is guilty of a closed season violation if he *hunts* any wild animal or wild bird during the closed season *or possesses* any wild animal or wild bird taken during the closed season on that wild animal or wild bird.
   (Emphasis added.)
   12 M.R.S.A. § 7457(1)(D) (Supp.1995) provides in relevant part:
   There is a continual closed season on deer in the following places:
   (1) Mount Desert Island; ....

2. The court instructed the jury in relevant part:

   Now, in this case there are two separate grounds under [the] statute for a violation of this closed season violation statute.... Now, the first element is did hunt—did hunt deer; and the second element is taken during closed season; that is—that is to say, again, did hunt deer during closed season; or the other ground is did possess deer taken during a closed season. So there are two offenses: one is to hunt during a closed season; the other offense is to have possession of a deer taken during a closed season. And the State must prove each of those elements ... beyond a reasonable doubt.

to violate the statute expressly, he is incorrect that such an instruction is required by the law. Indeed, we rejected such an argument made in the context of a similar statute prohibiting the hunting or possession of moose, stating:

> [I]n enacting ... [the statute], the Legislature intended that the mere *intentional* doing of acts amounting to possession ... give[s] rise to a sufficient culpable mental state required in proof of [a fish and game] violation and that knowledge that the conduct of the actor is prohibited by law (criminal turpitude) would not be an element of the crime.

*State v. Goyette,* 407 A.2d 1104, 1111 (Me. 1979) (emphasis in original). In *Goyette,* we relied in part on *State v. Koehling,* 381 A.2d 12 (1978), a case involving the unlawful possession of deer. In *Koehling,* we stated that:

> Where the State alleges a crime of possession of a physical object, it must prove possession by showing that the accused at some time bore one of two relationships to the object: he either had immediate physical control or occupancy of the object or knew where it was and had the intention and ability to gain physical control or occupancy of it.

*Koehling,* 381 A.2d at 14 (citation omitted); *see also State v. Sherburne,* 571 A.2d 1181, 1186 (Me.1990) (evidence was sufficient to show in prosecution for violation of fishing statute that defendants possessed fish). Although the defendant's culpable state of mind was not directly at issue in *Koehling,* the above passage emphasizes the proof required to convict a defendant pursuant to a statute prohibiting the possession of deer.

Fowler's reliance on 17–A M.R.S.A. § 34(1) is misplaced. Although subsection (1) of section 34 states that, in order to be found guilty of a criminal violation, a person must be proven to have had the requisite culpable state of mind with respect to each element of the alleged crime, subsection 5(B) provides that such intent may not be required if there is a legislative intent to im-

pose liability *without* a culpable state of mind.[3] In *Goyette,* decided shortly after the adoption of the Maine Criminal Code, 17–A M.R.S.A. §§ 1—1357 (1983 & Supp.1995), we held that a clear legislative intent to impose criminal liability for the mere possession of moose existed pursuant to a statute similar to the one at issue in this case. *Goyette,* 407 A.2d at 1111. In reaching our decision, we quoted language from an 1897 case that involved a statutory prohibition against smelt fishing: " '[some] acts, however, are sometimes made unlawful absolutely, without reference to any intent or other state of mind of the doer.' " *Id.* (quoting *State v. Huff,* 89 Me. 521, 523, 36 A. 1000 (1897)).

■ Proof of intent is not required in cases when, as here, it is not expressly set forth in the governing statute and there is a legislative intent to impose liability without proof of a culpable state of mind. It is clear that prior to the adoption of the Maine Criminal Code in 1976 no culpable state of mind was required for the violation of similar laws. *See Huff,* 89 Me. at 523, 36 A. 1000. Nothing in the Code's current language or comments, or in the hunting statute itself, discloses an intent to change this standard. *See* 17–A M.R.S.A. § 34; 12 M.R.S.A. § 7406; *see also Goyette,* 407 A.2d at 1111. All that was required to find Fowler guilty was proof beyond a reasonable doubt that he hunted or possessed the deer during a closed season.

■ We also reject Fowler's contention that the thirty-one month delay between the time he requested a transcript of the trial and the time it was produced by the court reporter constitutes a denial of his due process rights. Although we recognize that a substantial delay in the preparation of a transcript may result in a denial of a defendant's right to due process, in this case Fowler has failed to demonstrate what, if any, attempts were made by him to obtain the transcripts in a more timely fashion or that any prejudice to his rights occurred as a result of such a delay. *See United States v. Pratt,* 645 F.2d 89, 91 (1st Cir.1981), *cert. denied,* 454 U.S.

---

**3.** Maine's Inland Fish and Game laws regulating hunting provide penalties for the violation of their provisions and such violations constitute crimes defined outside Title 17–A, the Maine Criminal Code. 17–A M.R.S.A. § 6 (Supp.1995); *see also State v. Goyette,* 407 A.2d 1104, 1111 n. 7 (Me.1979).

881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); *State v. Rippy*, 626 A.2d 334, 339 (Me.1993). Accordingly, Fowler has not demonstrated that a denial of his right to due process of law occurred.

Last, Fowler's additional contention that there is insufficient evidence to support his conviction is without merit. The testimony offered at the trial disclosed that the deer was transported in the trunk of Fowler's car. Fowler himself admitted to placing the deer in the car. Coupled with the undisputed evidence that there is a perpetual closed season on deer on Mount Desert, there is sufficient evidence to prove Fowler's culpability under the statute. *Sherburne*, 571 A.2d at 1186; *see State v. Spooner*, 666 A.2d 863, 864–65 (Me.1995) (citing *State v. Barry*, 495 A.2d 825, 826 (Me.1985)).

The entry is:

Judgment affirmed.

All concurring.