STATE of Maine

v.

Thomas CONNORS.

Supreme Judicial Court of Maine.

Submitted on Briefs March 15, 1996.

Decided June 21, 1996.

David W. Crook, James M. Cameron, Assistant District Attorney, Skowhegan, for the State.

William Thomas Hyde, Skowhegan, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

CLIFFORD, Justice.

Thomas Connors appeals from the judgments entered in the Superior Court (Somerset County, *Chandler, J.*) on the jury verdicts finding him guilty of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1995) (Class C), and theft by unauthorized taking or transfer, 17–A M.R.S.A. § 353 (1983) (Class D). Connors contends that the trial court abused its discretion in ruling that certain evidence related to a separate, pending burglary charge against him in York County was admissible in the Somerset County prosecution. He also contends that the undue delay in the preparation of the trial transcript for use in his appeal violated his right to due process of law. Finding no error or abuse of discretion, we affirm the judgments.

On the morning of June 22, 1991, an associate manager at Wickes Lumber Company in Fairfield discovered that the store had been burglarized. An investigation revealed that the burglar likely entered the fenced property by cutting a hole in a chain-link fence with wire-cutters. The intruder disconnected the telephone lines to the building at an outside telephone pole before entering the premises, where he disengaged an alarm system by forcibly removing its wires and battery. An office safe was pried open, and $600 cash taken from it. Various papers and empty bank deposit bags were left scattered on the office floor. Although no incriminating fingerprints were recovered, bootprints left on papers and the floor were preserved as evidence by the police.

A similar burglary of an IGA grocery store in Waterboro took place on June 22 or 23, 1991, one or two days after the Wickes Lumber break-in. In the IGA burglary, the store's doors had been pried open afterhours. Like the Wickes Lumber incident, telephone lines outside of the store were disconnected, and an alarm system was disengaged by removing its wires and battery. A hammer and two-way radio were discovered near a damaged but unopened safe in the store's office. Desk drawers had been rifled through and bank deposit bags were left strewn on the floor. As with the Wickes Lumber site, no usable fingerprints were recovered by the police, but bootprints on the floor were discovered, measured, and photographed.[1]

A York County sheriff's deputy patrolling the area near the IGA store on the morning of the burglary discovery observed two men, one of whom was Connors, walking on Route 202 in need of a ride. After being stopped for questioning, Connors told the officer that he and his friend had been visiting from Massachusetts and were riding their all-terrain vehicles on nearby paths in the woods when their vehicles broke down. The two individuals later were arrested and their boots were seized for comparison with the prints that had been recovered from the site of the IGA burglary.

Connors subsequently was indicted on charges of burglary and theft by unauthorized taking from Wickes Lumber in Fairfield. Prior to the trial, Connors moved *in limine*, M.R.Crim.P. 12(c), for rulings on the admissibility of evidence related to the Waterboro burglary. In particular, Connors sought to exclude the expected testimony of Sergeant Philip Weymouth of the York County Sheriff's Department regarding his investigation of the IGA burglary, as well as any statements Connors made to a fellow inmate at the York County jail concerning Connors's participation in the Waterboro and Fairfield burglaries. Such statements were made at a time when Connors had been charged with, but not yet tried on, the burglary of the Waterboro grocery store.[2]

The court denied Connors's motion to exclude Weymouth's testimony, finding that the two burglaries were so similar and distinctive as to make the evidence admissible as an exception to M.R.Evid. 404(b).[3] The court

---

**1.** At the trial, the State's expert testified that he was unable to conclude that the bootprints left at the Waterboro burglary were made by the same boots used in the Fairfield burglary.

**2.** After Connors's trial and conviction in this case, the charges against him concerning the

Waterboro burglary were dismissed following the death of a critical State witness.

**3.** M.R.Evid. 404(b) provides:

   **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible

also denied Connors's motion to exclude the expected testimony of the fellow inmate, Jeffrey Allen Roderick. Roderick testified that Connors admitted to him having committed both the Waterboro and Fairfield burglaries, and described in detail to Roderick how he accomplished them, including his methods of opening safes and disengaging alarms. The court ruled that Roderick's testimony about the Waterboro burglary was admissible to corroborate the truthfulness of other portions of Roderick's testimony regarding Connors's admission to the Fairfield burglary. The court also found that such testimony was relevant to Connors's *modus operandi.* The court ruled, however, that the State could not ask Roderick or any other witness about why Connors was in custody in York County at the time he allegedly made the statements to Roderick.

At the trial, Connors continued to object to the use of evidence from the York County incident. He testified on his own behalf and denied participation in the Fairfield burglary. During the State's cross-examination, Connors invoked the privilege against self-incrimination, U.S. Const. amend. V; Me. Const. art. I, § 6, in response to questions about the Waterboro burglary and his use of an alias. At the close of the trial, the court denied Connors's request that the jury be instructed that he had not yet been tried on or convicted of the York County burglary charge.

The jury returned guilty verdicts on both the burglary and theft charges. Execution of Connors's sentences was stayed pending this appeal. His motion for a new trial was denied after a hearing. In his motion for a review of bail, Connors expressed concern over the length of time the court reporter was taking in preparing a transcript for use on appeal. On December 21, 1992, the court ordered that a transcript be prepared. The transcript was not completed until October 11, 1995.

## I.

■■ The admission of evidence of prior bad acts is within the discretion of the trial

court and is reviewed on appeal for an abuse of discretion. *State v. Dean,* 589 A.2d 929, 933 (Me.1991). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. M.R.Evid. 404(b). Such evidence, however, may be admissible if it is " 'relevant to specified facts and propositions' " involved in the case. *State v. Webber,* 613 A.2d 375, 377 (Me.1992) (quoting Field & Murray, *Maine Evidence* § 404.4 at 4–44 (3d ed.1992)).

■ We previously have upheld the admissibility of evidence of a prior bad act due to its signature-like similarity to another bad act. *See Webber,* 613 A.2d at 377 (evidence of earlier, similar incident of vandalism to victim's property relevant as signature evidence to prove defendant's animosity toward victim); *State v. Joubert,* 603 A.2d 861, 866–67 (Me.1992) (evidence of similar bite wound on prior victim admissible as signature evidence to prove identity of perpetrator). "Even if probative to the issues to be determined by the factfinder, however, evidence of prior bad acts must be excluded if the danger of unfair prejudice substantially outweighs that probative value." *Webber,* 613 A.2d at 377 (citations omitted).

■ The trial court found that the evidence related to the Waterboro burglary was relevant in two ways. First, it showed a plan or signature common to the Fairfield burglary, and demonstrated that Connors was in Maine committing burglaries at businesses located on major highways. At both crime scenes, wires were cut and alarms disengaged, safes manhandled, and bootprints left. Whether the two crimes were " 'sufficiently idiosyncratic,' " *Joubert,* 603 A.2d at 866 (quoting *United States v. Pisari,* 636 F.2d 855, 859 (1st Cir.1981) (citations omitted)), to support a reasonable inference that Connors committed the Fairfield burglary was for the trial court's determination. Nor did the evidence become inadmissible merely because the alleged Waterboro crime never resulted in Connors's conviction. *See State v. Wallace,* 431 A.2d 613, 616 (Me.1981) (affirming trial court's decision to admit evidence of

to prove the character of a person in order to        show that he acted in conformity therewith.

prior, uncharged burglary as relevant to identify common plan of defendant); Field & Murray at 4–51. In *Dean,* although the defendant had been acquitted of gross sexual misconduct prior to his trial, the actions underlying the basis of that prosecution were admitted for limited purposes and subject to a strong limiting instruction in a subsequent prosecution for unlawful sexual contact involving the same victim. *Dean,* 589 A.2d at 933.

Second, the evidence of the Waterboro burglary is relevant because it corroborated Roderick's testimony concerning the admissions Connors made to him regarding both the Fairfield and Waterboro burglaries. The credibility of Roderick's testimony is significantly enhanced by the circumstances of the two burglaries which match the details of Connors's admission to Roderick. The trial court carefully considered, pursuant to M.R.Evid. 403, the risks of unfair prejudice, and decided that the evidence related to the Waterboro burglary—the *modus operandi* as well as its corroborative value to Roderick's testimony—was proper for the jury's consideration when accompanied by a carefully-worded limiting jury instruction.[4] *See State v. Brown,* 552 A.2d 12, 14 (Me.1988) (cellmate's testimony that defendant had promised to help him escape when he was released from jail held to be probative of the relationship between the two men, which in turn allowed jury to give more credence to the cellmate's substantive testimony). Evidence of other bad acts also has been allowed as relevant to proving or disproving the credibility of a witness in other situations. *See State v. Hildings,* 611 A.2d 92, 93–94 (Me. 1992) (evidence of the fact that witness previously sought and obtained protection from abuse order against her defendant husband admissible to disprove her testimony that she did not fear him). Accordingly, the trial court did not abuse its discretion by admitting the evidence at the trial.

## II.

■ Connors also contends that an approximate thirty-four month delay in the preparation of the transcript of his trial resulted in a violation of his due process rights pursuant to U.S. Const. amend. V, and Me. Const. art. I, § 6–A. A review of the relevant factors for analysis discloses, however, that his rights were not prejudiced due to the delay. *See State v. Fowler,* 676 A.2d 43, 45 (Me.1996).

■ Not every delay in the appeal of a case constitutes a denial of due process. The United States Supreme Court has set forth four factors to be considered in determining whether a denial of due process has resulted from such a delay. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice resulting to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

Connors filed a motion for the preparation of the transcript in December 1992. The transcript, however, was not finally prepared and filed with this Court until October 1995. Although such a delay is serious and is to be avoided, Connors, who was not incarcerated pending this appeal, offers little evidence as to how such a delay actually prejudiced his rights. Based on such a limited record, we cannot say that his interest in a prompt appeal seriously has been impaired. *Fowler,* 676 A.2d at 45; *State v. Rippy,* 626 A.2d 334, 339 (Me.1993).

---

4. The court instructed the jury as follows:

Now, there has been evidence introduced in this case concerning an incident in York County at the Waterboro I.G.A. store. I assume it is clear to you that that is not the crime for which Mr. Connors is being tried in this trial. You may use any evidence which you wish to with regard to that event in York County for a limited purpose. You may use it, along with all of the other evidence in the case, in making your determination as to whether there is some similarity between what happened there that would, in fact, be helpful to you in making your determination as to whether Mr. Connors is guilty of the offense charged in Somerset County.

You may not use the evidence concerning the York County event to find that Mr. Connors committed some prior bad act and so, therefore, probably committed this one. The State cannot use a prior bad act in an attempt to convince you that if the defendant did something somewhere else he probably, in fact, committed this offense.

The entry is:

Judgments affirmed.

WATHEN, C.J., and RUDMAN, and LIPEZ, JJ. concurring.

GLASSMAN, Justice, dissenting.

Because I do not agree with the Court that the evidence relating to the Waterboro burglary was properly admitted, I respectfully dissent. It is well established that to be relevant pursuant to M.R.Evid. 402, and not excluded pursuant to M.R.Evid. 403, the proffered "signature" evidence must be "sufficiently idiosyncratic" to support the reasonableness of an inference that both offenses were committed by the same person. *State v. Joubert,* 603 A.2d 861, 866 (Me.1992); M.R.Evid. 404(b). It is also well established that evidence that the defendant committed the same offense, although unrelated in time and place, is "extremely prejudicial." *State v. Works,* 537 A.2d 221, 223 (Me.1988); M.R.Evid. 403.[1] The Court today has failed to give adequate consideration to either of these principles.

The cases relied on by the Court to illustrate the admissibility of the challenged evidence do not support its admission. In *Joubert,* the defendant, charged with the murder of 11–year-old Ricky Stetson, on a plea of guilty had been convicted previously in Nebraska of the murder of Danny Joe Eberle. Over the objection of Joubert, a Nebraska journalist testified that Joubert had told him that, during an encounter with Eberle, he had bitten Eberle in several places and had used a knife to try to hide the bite mark on Eberle's left thigh by cutting or carving it. The State carefully avoided eliciting any testimony that Eberle had been killed or that Joubert had been convicted of his murder. The trial court had before it a stipulation of the parties detailing the striking similarities in the Maine and Nebraska crimes: both victims were white males of about the same age and height; both were killed by knife wounds; both were bitten on the leg "and had crisscross slash wounds that attempted to disguise the bite marks"; both victims had been on foot prior to their respective attacks; both had been bound; and the bodies of both had been left at the murder sites. *Joubert,* 603 A.2d at 866. We upheld the challenged evidence, stating that "[t]he unusual bite marks with concomitant slashes, together with the similar physical characteristics and manner of death of both victims, 'are sufficiently idiosyncratic' to ·support the reasonableness of the trial court's inference that they were killed by the same person" and the evidence was not so unfairly prejudicial as to outweigh its probative value. *Id.* Similarly, in *State v. Webber,* 613 A.2d 375 (Me.1992), we determined that evidence was sufficiently idiosyncratic when, on two separate occasions, the defendant vandalized the same victim's car, in the same parking lot, at the same time of day and by scratching the word "AIDS" into the vehicle's paint with a sharp implement. *Id.* at 376.[2]

Here, by contrast, nothing in the manner in which these burglaries were accomplished is idiosyncratic. In support of its decision, the Court recites the only similarities between the two offenses: "At both crime scenes, wires were cut and alarms disengaged, safes man-handled, and bootprints left." The Court correctly points out that the bootprints lacked any identifying characteristics, leaving only the fact that the perpetrators cut the telephone lines, disengaged the alarms and attempted to gain access to the respective safes. It is difficult to imagine, in the context of the burglary of a commercial establishment, a set of characteristics less helpful in ascertaining the identity of the perpetrator.

In addition, the State's argument that the evidence was offered to corroborate the testimony of Jeffrey Roderick, Connors's cellmate, is equally meritless. The State cannot now seriously contend that, having improperly elicited from Roderick the testimony regarding the Waterboro burglary, the addi-

---

1. M.R.Evid. 403 provides in pertinent part:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

2. Our opinion in *State v. Webber,* 613 A.2d 375 (Me.1992), notes only that the second vandalism was accomplished in "a manner strikingly similar to the previous vandalism of [the] vehicle." *Id.* at 376. The record in *Webber,* however, discloses the factual similarities noted herein.

tional evidence regarding that burglary was necessary to corroborate Roderick's testimony.

Notwithstanding the failure to justify the admission of the evidence on signature or credibility grounds, the Court also fails to give adequate consideration to the level of prejudice to the defendant by the submission to the jury of the challenged evidence. In *Works,* the defendant was charged with assault and public indecency because, while in a supermarket, he exposed his genitals to an eight-year-old girl and "pressed up against her while so exposed." *Works,* 537 A.2d at 222. The defendant admitted being present in the supermarket, but denied that he had exposed himself. On cross-examination, the defendant admitted that, at another time subsequent to his indictment in the case at bar, he had masturbated in an aisle of a department store. *Id.* We held that this evidence, even though of a similar act, was inadmissible as a matter of law pursuant to a Rule 403 analysis and vacated the judgments of conviction. Our reasoning in *Works* is particularly apt here:

> Evidence that defendant had been involved in an incident similar to the offense for which he is on trial is extremely prejudicial. *See State v. Goodrich,* 432 A.2d 413, 417–18 (Me.1981). The jury is improperly led to believe that *if* defendant acted in a certain manner once, he probably committed the similar crime charged. *Id.* The evidence is particularly prejudicial in this case where defendant, although he admitted to being in the supermarket at the time of the crime, has denied that he committed the crime.... Testimony elicited from defendant himself that he had acted similarly at an unrelated time was so highly prejudicial ... that its erroneous receipt in evidence during trial could not be cured by the court's much later instruction to the jury to disregard it.

*Id.* at 223.

In my opinion, an application of these well-established governing principles requires that the judgments be vacated.