STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                   No. CR-15-5036


TIMOTHY WILCOX,

          Petitioner,

v.                                                ORDER


STATE OF MAINE,

          Respondent


Before the court is an unusual second petition filed by Timothy Wilcox for post-conviction review.

On March 27, 1996 a jury found Wilcox guilty of two counts of kidnapping, eight counts of gross sexual assault, two counts of robbery, and one count of unlawful sexual contact. *State v. Wilcox*, CR-95-881. Wilcox was sentenced in October 1996 to consecutive sentences totaling 49 years (Calkins, J.). Thereafter Wilcox filed a petition for post conviction review alleging ineffectiveness of counsel, which was denied after a hearing on June 30, 2004. *Wilcox v. State*, CR-97-590 (Crowley, J.).

This second petition was filed in August 2015, triggered by a May 2015 letter from the Department of Justice stating that a witness from the FBI Laboratory had presented hair comparison testimony "containing erroneous statements" at the trial.

An amended petition was filed on May 2, 2016, asserting the questioned hair comparison testimony as Ground One and also asserting additional grounds relating to the failure of trial counsel to seek a severance and the alleged ineffectiveness of Wilcox's original post-conviction counsel. The State did not challenge the timeliness of petitioner's claim with respect to the hair

comparison testimony (Ground One of the amended petition), presumably because it acknowledged that the factual predicate of that claim could not have been discovered through due diligence prior to the May 2015 Department of Justice letter. 15 M.R.S. § 2128-B(1)(C).[1] However, it challenged Grounds Two and Three because the claims asserted in those grounds were untimely and because a second post-conviction petition cannot be brought based on alleged ineffectiveness of petitioner's first post-conviction counsel.

The court dismissed Grounds Two and Three of the amended petition by order dated August 24, 2016, and the case proceeded to a hearing on Ground One of the amended petition on February 10, 2017. Thereafter both counsel for Wilcox and counsel for the State filed post-hearing memoranda.

Post-Conviction Review

In an ordinary post-conviction review the petitioner has the burden of showing both ineffectiveness and prejudice by a preponderance of the evidence. The parties to this case appear to agree that, due to the unusual circumstances of this case, the sole issue is whether Wilcox has met his burden of showing prejudice – whether he has shown a reasonable probability that, absent the testimony of FBI Agent Joseph Dizinso that has now been called into question, the result of the proceeding would have been different. *See Theriault v. State,* 2015 ME 137 ¶¶ 14, 19, 125 A.3d 1163; *Manley v. State,* 2015 ME 117 ¶¶ 12, 18, 123 A.3d 219 (cases applying and quoting from *Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984)).

---

[1] Under the circumstances, where certain aspects of the testimony presented by an FBI witness have been withdrawn by the U.S. Department of Justice, the State has also quite properly not advanced any argument that it is too late to present newly discovered evidence under the two-year deadline in M.R.U.C.D. 33.

The Law Court recently clarified in *Theriault* that in requiring a showing of a "reasonable probability" that the result of the proceeding would have been different, *Strickland* did not necessarily require a showing that it is likely that the outcome of the case would have been different. 2015 ME 137 ¶¶ 19-20. The defendant must show that there is a sufficient probability of a different result "to undermine confidence in the outcome of the proceeding." *Strickland*, 466 U.S. at 694; *Theriault,* 2015 ME 137 ¶ 19.

Overview of the Evidence at Trial

The convictions of Wilcox arose from charges relating to three different individuals based on similar events that occurred on January 26, 1995, March 17, 1995, and March 21, 1995.

With respect to the events of January 26, 1995, the State offered evidence that Wilcox offered a woman named Cynthia Levesque a ride home around 9:00 pm in the evening but drove her to a remote location where he forced her at gunpoint to perform oral sex on him. According to Levesque's testimony, Wilcox then forced her to partially undress and inserted his penis in her vagina but was unable to maintain an erection. He then told her to perform another oral sex act, but she managed to open the car door and fall out. Wilcox grabbed her pant leg and dragged her for a short distance before the pants pulled off. He then drove off, leaving her by the side of the road wearing nothing but a sock and a bra.

With respect to the events of March 17, 1995, the State offered evidence that Wilcox offered a ride to a woman named Judy Stain around 12:30 am, that he did not drop her at her home or let her out of the car as she requested but took her to a deserted parking lot below the Eastern Prom and forced her to perform oral sex on him at gunpoint. He then ripped her clothes off, raped her vaginally, and inserted his gun inside her vagina. Finally, he pushed her out of the

car and drove off, taking some of her clothes and possessions and leaving her wearing only sneakers and socks.

Finally, with respect to the events of March 21, 1995, the State offered evidence that Wilcox offered a woman named January Fitzsimmons a ride at about 11:30 pm and then asked her if she wanted to smoke marijuana. When she said yes, he drove her to a remote location but after they smoked, he produced a gun and forced her to perform oral sex on him. He then forced her to take off her pants and penetrated her both anally and vaginally but was having trouble maintaining an erection. He then compelled her to perform oral sex on him again and to masturbate, subsequently demanding her backpack, taking some of her clothes, and telling her to get out of the car.

At his jury trial in March 1996 Wilcox was convicted of kidnapping and 2 counts of gross sexual assault with respect to the January 26, 1995 events involving Cynthia Levesque. He received sentences of 16 years concurrent on all three counts as to those offenses.

Wilcox was also convicted of kidnapping, three counts of gross sexual assault, and one count of robbery with respect to the events of March 17, 1995 involving Judy Stain. He received sentences of 17 years on those five counts, concurrent with each other but consecutive to the 16 year sentence on the counts involving Cynthia Levesque.

Finally, Wilcox was convicted of three counts of gross sexual assault and one count of robbery with respect to the events of March 21, 1995 involving January Fitzsimmons. He received sentences of 16 years on those four counts, concurrent with each other but consecutive to the 17 year sentence on the counts involving Judy Stain.[2]

---

[2] Wilcox was also convicted of an additional charge of unlawful sexual contact involving January Fitzsimmons and received a concurrent five-year sentence on that charge.

Identity was the major issue at the trial – whether there was proof beyond a reasonable doubt that Timothy Wilcox was the person who had offered rides to Crystal Levesque, Judy Stain, and January Fitzsimmons and had then subjected them to sexual assaults at gunpoint. That evidence included the following:

• Cynthia Levesque was shown a photo array and said that two of the photos looked like her assailant. One of those photos (photo # 2) was of Wilcox. Without prompting, she also testified at trial that those two photographs "kind of looked like the guy sitting in the courtroom right now." Tr. I at 49; Tr. II at 168-69.

• Both Judy Stain and January Fitzsimmons were shown the photo array and identified Wilcox's photo as the photo of their assailant. In the courtroom both also identified Wilcox as the assailant. Tr. I at 134, 136; Tr. II at 28, 32, 169-70.

• All three women testified that their assailant had a brace on his right leg. Tr. I at 38, 122; Tr. II at 169-70.

• All three women recalled that the assailant's automobile had hand controls on the steering wheel for a person with disabilities. Tr. I at 66, 146; Tr. II at 40.

• All three women were picked up after dark and displayed varying degrees of uncertainty as to the color of the assailant's car. Stain originally told the police that the car was green with a tan interior. Fitzsimmons originally stated that that the car had handicapped plates and was white with a maroon interior. Levesque testified that the assailant's car was a brown sedan with handicapped plates. Tr. I at 32, 120; Tr. II at 10, 48. All three women, however, positively identified Wilcox's car after he had been arrested, and Fitzsimmons testified that she cried when she saw the car in the police garage because she remembered what had happened in it. Tr. I at 48, 135; Tr. II at 49.

• All three women testified, with various degrees of certainty, that the pellet gun recovered from Wilcox's residence resembled the gun that their assailant had held to their heads. Tr. I at 46, 135: Tr. II at 31.

• A purple and green jacket that Stain had been wearing when she was picked up by her assailant and that remained in the assailant's vehicle after the sexual assault had been given by Wilcox to his sister and was recovered by the police from an in-law who had received the jacket from Wilcox's sister. Tr. I at 132; Tr. II at 210, 214-15. Wilcox had told his sister that someone left the coat in his car. Tr. II at 210-11.

• Keychains that were taken from Judy Stain by her assailant on the night she was sexually assaulted were found in the glove compartment of Wilcox's vehicle. Tr. I at 132; Tr. II at 122-23.

5

• When he was arrested, Wilcox was wearing a Chicago Bulls jacket that had been taken from Fitzsimmons by her assailant on the night Fitzsimmons was sexually assaulted. Tr. II at 23, 29-30, 90, 145.

• A backpack that the assailant had taken from Fitzsimmons on the night she was sexually assaulted was recovered by the police from Wilcox's brother, who said he had bought it from Wilcox. Tr. II at 22, 29-30, 117, 200-03.

• A database analyst from the Department of Motor Vehicles testified that a search in the database for brown automobiles within the range of models and years described by the three women with handicap controls and male operators between the ages of 15 and 40 resulted in one vehicle – the vehicle belonging to Wilcox. Tr. II at 77-79.

Evidence that Wilcox was the assailant also included the questioned testimony from FBI Agent Joseph Dizinso from the FBI Crime Lab with respect to certain hair comparisons.

## Dizinso Testimony

Dizinso testified that he had been able to compare what he believed to be foreign hairs found in the rape kits of Cynthia Levesque and January Fitzsimmons with known pubic hair samples from Timothy Wilcox. He did not find any foreign hairs in the rape kit of Judy Stain. As to both the Levesque and Fitzsimmons rape kits, Dizinso testified that the foreign hairs had the same microscopic characteristics as the known Wilcox sample and that the foreign hairs were consistent with having come from Wilcox. Tr. Vol. III at 32, 35.

Dizinso also stated several times, both on direct and cross examination, that hair comparisons, as opposed to evidence such as fingerprints, are not a basis for absolute personal identification. Id. at 32, 40, 42.

Dizinso went on to testify, however, that it was rare that "we see hairs from two different individuals that we can't distinguish between." Id. at 32. Moreover, he testified that in thousands of comparisons, he had only been unable to distinguish between hairs from different sources

6

"one time. It's so rare that when it happens in the unit these hairs are shown to other examiners in the unit, and it very, very rarely happens." Id. at 42.

The May 2015 Department of Justice letter refers to three categories of potential errors in hair comparison testimony given by FBI examiners prior to December 1999. The letter attaches an evaluation form identifying specific errors in Dizinso's testimony. These were his statement that the hairs found in the Levesque and Fitzsimmons rape kits were consistent with having come from Wilcox and his testimony that it was very rare that hair from different individuals could not be distinguished. According to the DOJ letter, this testimony fell within the category of error it identified as "Error 2," which involves situations where

> the examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association – this type of testimony exceeded the limits of the science . . .

Considered in isolation, it might be possible to dispute the extent to which Dizinso's testimony that the foreign hairs were "consistent with" those of Wilcox was erroneous.[3] However, when coupled with his scientifically invalid testimony as to the extreme rarity of situations where hairs from different individuals cannot be distinguished, the court concludes that the errors in Dizinso's testimony cannot be minimized.[4] His acknowledgement that hair comparison was not a

---

[3] Petitioner's expert witness, who has successfully completed all requirements for a PhD in forensic science from the University of Dundee in Scotland, testified that it would have been more appropriate for Dizinso to testify that the hair could have come from Wilcox "or from someone with the same characteristics." However, the court does not discern any material difference between that form of testimony and testimony that the hair was consistent with that of Wilcox except that the latter sounds semantically more favorable.

[4] Indeed, although not identified as such in the Department of Justice letter, Dizinso's testimony as to the rarity of instances in which FBI examiners were unable to distinguish hair samples from different individuals also appears to fall within the third category of potential errors listed in the DOJ letter (error

basis for absolute personal identification was largely negated by his testimony as to the extreme rarity of instances in which hair from different individuals could not be distinguished.

Since 1999 hair comparisons have been made with mitochondrial DNA, but in this case counsel have stipulated that the hairs in question here no longer can be tested because the biological evidence in this case was destroyed sometime before the DOJ letter was sent. According to the transcript and the docket sheet, the hair samples were not entered into evidence at the trial.[5]

No evidence was offered to suggest that the prosecutor was aware of the unreliability of Dizinso's hair comparison testimony at the time of trial or at any time up until the May 2015 DOJ letter.

Reasonable Probability of Different Outcome

The DOJ letter and on the testimony of petitioner's expert witness, Alicia Wilcox (no relation), establish that the testimony of Dizinso was invalid. The remaining question is whether that testimony tainted the proceeding to the point where there is a sufficient probability of a different result to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694; *Theriault*, 2015 ME 137 ¶ 19. Wilcox has the burden of proof on that issue.

At the outset, the court concludes that there is more than enough other evidence identifying Wilcox as the assailant of Judy Stain and January Fitzsimmons so that there is no

---

3): "the examiner cites the number of cases or hair analyses worked in the laboratory and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that the hair belongs to a specific individual."

[5] Since the hearing, the court has been advised that the trial exhibits are also no longer available, apparently because the Clerk's Office released them to the Portland Police Department sometime after the trial or the first post-conviction proceeding. Upon inquiry, the clerk's office has been advised that the Portland Police Department has not retained those items.

probability of a different result with respect to Wilcox's convictions relating to the sexual assaults on those two women.[6] Both Stain and Fitzsimmons recognized Wilcox in the photo array, and both identified him in court. Perhaps most tellingly, the property of both Stain and Fitzsimmons – property kept by their assailant after he had finished sexually assaulting them and thrown them out of his vehicle – were found in Wilcox's possession (Stain's keychain, Fitzsimmons's Chicago Bulls jacket) or in the possession of Wilcox's relatives or in-laws (Stain's purple and green jacket, Fitzsimmons's backpack).

In fact, in his post-hearing submission counsel for Wilcox implicitly concedes that his convictions for the offenses involving Stain and Fitzsimmons are not vulnerable by focusing almost entirely on Wilcox's conviction for the offenses involving Cynthia Levesque.[7]

The evidence as to Levesque was not as strong. Shown the photo array, she excluded four individuals and identified a photo of Wilcox and a photo of another individual as the possible assailants. Although it occurred without prompting, Levesque's in court identification was phrased in the following terms – that the assailant "kind of looked like the guy sitting in the courtroom right now." This was considerably less positive than the in-court identifications made by Stain and Fitzsimmons. Levesque did, however, appear to be more positive when she went on to state, "He has a mustache now, he didn't have one then, and he had a beard then." Tr. I at 50.

---

[6] As noted above, Wilcox was convicted of one count of kidnapping, one count of robbery, and three counts of gross sexual assault on Judy Stain. He was convicted of one count of robbery, one count of unlawful sexual contact, and three counts of gross sexual assault on January Fitzsimmons.

[7] Petitioner's post-hearing memorandum states that the jury was given a "fairly strong story about the rapes of Stain and Fitzsimmons" but "had far less evidence with respect to Cynthia Levesque." Petitioner's Written Argument dated February 27, 2017 at 4. Subsequently petitioner's memorandum argues that "Timothy Wilcox was convicted of the attack on Cynthia Levesque because of [Dizinso's testimony]," and the memorandum concludes with the argument that at a new trial, a different jury would likely reach a different result based on the evidence in the case for Cynthia Levesque, minus Dizinso's testimony." Id. at 5 (emphasis added).

9

In addition, the only physical evidence tying Wilcox to the sexual assault of Levesque is the now-discredited hair comparison by Dizinso. In opening and closing arguments, the prosecutor never argued that the hair comparison evidence was the lynchpin of her case. Instead, she always listed that evidence as part of a lengthy catalogue of evidence pointing to Wilcox as the person who sexually assaulted the three victims. Tr. I at 24-25; Tr. III at 64-65, 93. However, she did specifically argue that the hair comparison was a corroboration of the attack on Levesque. Tr. III at 70.

If the case involving the kidnapping and sexual assault of Cynthia Levesque were considered separately, the court would agree without much question that Wilcox would meet his burden of showing that, without Dizinso's testimony, there would be a reasonable probability of a different result. However, the sexual assault on Levesque was tried along with the sexual assaults on Stain and Fitzsimmons, and the evidence offered by the State established a similar *modus operandi* leading to a strong inference that all the assaults were committed by the same person.

Most strikingly, during the same two-month period, all three victims were walking at night along one of the two main parallel streets one or two blocks apart – Congress Street and Cumberland Avenue – that lead from the West End to Munjoy Hill on the Portland peninsula.[8] All three were offered a ride by a person in a car with handicapped plates and handicapped

---

[8] Levesque was walking back from Munjoy Hill along Congress Street headed to Sherman Street. Tr. I at 31-33. Stain was walking along Cumberland Avenue in the direction of Munjoy Hill. Tr. I at 118-20. Fitzsimmons was at the intersection where Cumberland Avenue, Deering Avenue, and Congress Street come together. Tr. II at 9.

10

controls on the steering wheel.[9] All three saw that the driver had a brace on his right leg. All three were driven to a remote location and subjected to multiple sexual assaults.

Specifically, all three women had a gun held to their heads and were first compelled to perform oral sex on their assailant. Levesque and Fitzsimmons were told, in the assailant's words, "to suck his dick." Tr. I 36; Tr. II 15. Stain testified that he held the gun to her head and "asked me to blow him." Tr. I 125. All three were then forcibly undressed so that the assailant could insert, or attempt to insert, his penis in their vaginas (with Fitzsimmons also being subjected to anal penetration and Stain being subjected to vaginal penetration by the assailant's gun). Two of the women, Levesque and Fitzsimmons, testified that the assailant had difficulty maintaining an erection. When that occurred, the assailant told both Levesque and Fitzsimmons to perform oral sex on him a second time. Although Levesque managed to fall out of the car at that point, Fitzsimmons was again compelled to perform oral sex.

All three victims were eventually left by the side of the road with little or no clothing. Finally, when he was arrested four nights after the sexual assault on January Fitzsimmons, Wilcox was again cruising the same neighborhood in his vehicle in the late evening.[10]

The highly similar nature of the manner in which Levesque, Stain, and Fitzsimmons encountered their assailant while walking in the same area of the City, the highly similar way they were lured into his vehicle and then taken to remote locations, the highly similar nature of the brutal sexual assaults themselves, and the evidence that all three attacks were perpetrated within a two-month period by a man with handicapped controls in his car and wearing a leg

---

[9] Stain testified that the driver looked familiar but after she got in, she realized she did not recognize him and began asking to be let out. Tr. I at 121. Fitzsimmons testified that she saw the handicapped plates and thought the driver would not present a threat. Tr. II at 10.

[10] Wilcox was arrested at the corner of Mellen Street and Deering Avenue, Tr. II 88, which is halfway between Cumberland Avenue and Congress Street and approximately a block from where January Fitzsimmons had been picked up by her assailant four nights earlier.

11

brace demonstrated that the sexual assaults were "connected in time, purpose, and *modus operandi*" and were properly joined. *State v. Pierce*, 2001 ME 14 ¶ 16, 770 A.2d 630, *quoting State v. Bradley,* 414 A.2d 1236, 1238 (Me. 1980). More importantly, given the similarities, these were "signature" crimes which strongly pointed to the conclusion that they were all committed by the same person. *See State v. Joubert*, 603 A.2d 861, 866 (Me. 1992). Wilcox's characteristics (including his leg brace and the handicapped controls on his car) and his possession of clothing and other items taken from two of the women who were sexually assaulted established that Wilcox was the assailant.

Because the "signature-like similarity" of the sexual assaults in this case, *see State v. Connors*, 679 A.2d 1072, 1074 (Me. 1996), is powerful evidence that Wilcox was the assailant in all three cases, the court concludes that Wilcox has not met his burden of proving by a preponderance of the evidence that, absent Dizinso's testimony, there is a sufficient probability of a different result to undermine confidence in the verdicts returned on the kidnapping and gross sexual assault charges involving Cynthia Levesque.

In this connection, although the court accepts the testimony of Plaintiff's expert witness with respect to the invalidity of Dizinso's hair comparison testimony based on the current state of scientific knowledge, it does not accept her testimony as to the weight placed by jurors on scientific evidence. Specifically, the court does not accept that generalizations as to the amount of weight given to scientific evidence can be made based on post-trial interviews with a total of 22 jurors from 11 trials involving a range of scientific evidence -- from DNA to firearms. The amount of weight given by jurors will depend both on the nature of the scientific evidence involved, the strength of the other evidence in the case, and how that evidence fits (or does not fit) together. In this case, the hair comparison evidence was part of a catalogue of evidence

12

identifying Wilcox as the person who sexually assaulted Cynthia Levesque, but the remaining evidence, especially the signature-like nature of the three assaults, is sufficiently compelling that Wilcox has not met his burden of proving that he should be granted post-conviction relief.

The petition for post-conviction review is denied.

Dated: April 7, 2017

_____
Thomas D. Warren
Justice, Superior Court

13

STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
No. CR-15-5036

TIMOTHY WILCOX,

Petitioner,

v.

STATE OF MAINE
Cumberland, ss. Clerk's Office

ORDER

STATE OF MAINE,

AUG 2 4 2016

Respondent

RECEIVED

Before the court is the State's motion to dismiss Grounds Two and Three of the Amended Petition filed by Timothy Wilcox in the above-captioned post-conviction case.

This case is unique because the pending petition was filed 19 years after Wilcox was convicted.

On March 27, 1996 a jury found Wilcox guilty of two counts of kidnapping, eight counts of gross sexual assault, two counts of robbery, and one count of unlawful sexual contact. *State v. Wilcox*, CR-95-818. Wilcox was sentenced in October 1996 to consecutive sentences totaling 49 years (Calkins, J.). Thereafter Wilcox filed a petition for post conviction review alleging ineffectiveness of counsel, which was denied after a hearing on June 30, 2004. *Wilcox v. State*, CR-97-590 (Crowley, J.).

This second petition was filed in August 2015, triggered by a May 2015 letter from the Department of Justice stating that a witness from the FBI Laboratory had presented what the letter described as hair comparison testimony "containing erroneous statements."

Wilcox thereafter filed the post-conviction petition that is now before the court. Counsel was appointed, and after several extensions, an amended petition was filed on May 2, 2016.

Ground One of the amended petition is based on the now-questioned hair comparison testimony. The amended petition also asserts two additional grounds. Ground Two of the amended petition alleges that Wilcox's original trial counsel was ineffective in not seeking a severance of the charges, which involved three different victims. Ground Three of the amended petition alleges that Wilcox's counsel in his first post-conviction proceeding was ineffective in not asserting a claim based on trial counsel's failure to seek a severance.

In its response to the petition, the State has outlined its defense to Ground One and has moved to dismiss Grounds Two and Three. Specifically, as to Ground Two, the State argues that the failure to seek a severance was an issue that could have been raised in the first post-conviction petition and that petitioner's claim as to the failure to seek a severance is untimely. As to Ground Three, the State argues that post-conviction review is not available to challenge the effectiveness of counsel in a prior post-conviction review proceeding.

In response, counsel for petitioner addressed the State's arguments on Ground One but did not address the State's arguments with respect to Grounds Two and Three.[1] *See* Petitioner's Reply to State's Answer to Amended Petition dated July 20, 2016.

The court agrees that Grounds Two and Three are subject to dismissal. First, as to Ground Two, any argument that trial counsel was ineffective in not seeking severance should have been filed within one year. 15 M.R.S. § 2128-B(1)(A). The State is not challenging the timeliness of petitioner's claim with respect the hair comparison testimony (Ground One), presumably because it acknowledges that the factual predicate of that claim could not have been discovered through due diligence prior to the Department of Justice letter. 15 M.R.S. § 2128-B(1)(C). In contrast, the factual predicate for any claim of alleged ineffectiveness with respect to

---

[1] Counsel for petitioner asked for time to address the State's response and was granted an extension to address the motion to dismiss Grounds Two and Three. See handwritten endorsement dated June 20, 2016.

2

severance (Ground Two) would have been immediately apparent. The court cannot see any reason why such a claim claim could not have been asserted in a timely fashion. Specifically, that claim could have been asserted in Wilcox's first post-conviction petition. It was not, and in any event it cannot be raised 19 years later.

As to Ground Three, under longstanding Law Court precedent, Maine's post conviction review statute does not authorize a second post-conviction petition seeking to challenge the effectiveness of counsel who represented the defendant on a prior petition for post-conviction review. *McEachern v. State*, 456 A.2d 886, 889-90 (Me. 1983).

Accordingly, Grounds Two and Three of the amended petition are dismissed.

In the petition, the State's response, and petitioner's reply to the State's response, petitioner and the State have both presented arguments with respect to the merits of Ground One. However, the court is uncertain whether there is agreement that Ground One can be decided on the basis of the existing record and the trial transcript or whether further proceedings are necessary. The Clerk's office shall schedule a conference to address what further proceedings counsel believes are necessary to resolve Ground One.

Dated: August 24, 2016

_____
Thomas D. Warren
Justice, Superior Court

3